429 A.2d 1143

**COMMONWEALTH of Pennsylvania**

v.

**Cindy Lou DODGE, a/k/a Cindy Williams, Appellant.**

Superior Court of Pennsylvania.

Argued Nov. 12, 1980.

Filed May 15, 1981.

Petition for Allowance of Appeal Denied Aug. 24, 1981.

150

Carl M. Janavitz, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before SPAETH, WICKERSHAM and LIPEZ, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for prostitution [1] and criminal conspiracy.[2] Appellant argues that for numerous reasons, the provision of the Crimes Code making prostitution criminal is unconstitutional; she also argues that her motion for a mistrial should have been granted. Finding no merit in either argument, we shall affirm.

In June 1978 the Pennsylvania State Police were investigating prostitution in Pittsburgh. As part of this investigation, on June 15 Trooper Louis W. Gentile telephoned a woman later identified as Debbie Ross. Gentile told Ross that he was a businessman named "Tony" from Philadelphia, that he was attending a convention in Pittsburgh, and that a friend, Joe, had given him her telephone number and had said that if he wanted sexual services, he should call the number and "he would be satisfied." N.T. at 13.

1. 18 Pa.C.S. § 5902(a).

2. 18 Pa.C.S. § 903(a)(1).

Apparently suspicious, Ross questioned Gentile about the identity of Joe and his familiarity with Philadelphia. She then asked Gentile what "exactly" he wanted. N.T. at 13. Gentile said there were seven people in his party seeking sexual services. N.T. at 13. Ross instructed Gentile to come to her residence so that she could check his identification, and told him that if she "approved," it would cost $25 per man plus $25 for cab fare for the "lady." N.T. 13–14.

Gentile went by cab to the address provided by Ross. After inspecting Gentile's driver's license and business card, Ross directed Gentile to a motel in Pittsburgh. Ross told Gentile that he would have to pay the $200 before any sexual services would be rendered. N.T. at 16. Gentile went to the designated room and was greeted by appellant, who was naked. N.T. at 18. She explained that "Debbie" had just called and she had not had time to get dressed. N.T. at 18. She asked Gentile if "Debbie" had told him that the $200 would have to be paid "up front." N.T. at 19. Gentile replied that Ross had told him, and that he would make the payment, but that it would have to be at his hotel room because he would have to get the money from the other members of the party. N.T. at 20. Appellant and Gentile then went by cab to Gentile's hotel. Upon arriving at Gentile's room, they were greeted by another Pennsylvania State Trooper, Gerald Fielder, who was in bed dressed only in his underwear. N.T. at 22. After discussing the specific services to be rendered, and after payment of the $200.00, appellant began to undress. N.T. at 22. Fielder then told appellant that she was under arrest, advised her of her Constitutional rights, and asked her how the money was to be divided. Appellant said that she and Ross divided the money evenly. N.T. at 22.[3]

## I.

Section 5902(a) of the Crimes Code provides:

(a) Prostitution.—A person is guilty of prostitution; a misdemeanor of the third degree, if he or she:

3. Debbie Ross was arrested the next day.

(1) is an inmate of a house of prostitution or otherwise engages in sexual activity as a business; or

(2) loiters in or within view of any public place for the purpose of being hired to engage in sexual activity.

Appellant argues that this provision is unconstitutional for numerous reasons:[4] it violates the fifth and fourteenth amendments of the United States Constitution because the terms "sexual activity as a business," "loiters," and "inmate of a house of prostitution" are vague and capable of an overbroad interpretation; it violates the first amendment in that it is susceptible to improper application by law enforcement officials and so results in a "chilling" of the first amendment rights of freedom of speech, association and peaceable assembly; it violates the equal protection clause of the fourteenth amendment of the United States Constitution and the equal rights amendment of the Pennsylvania Constitution because it provides for disproportionate punishments based on gender classification between the female prostitute and the male patron and promoter of prostitution; it violates the right to privacy guaranteed by the first, ninth, and fourteenth amendments of the United States Constitution and Article 1, section 9, of the Pennsylvania Constitution; it violates the fifth and fourteenth amendments of the United States Constitution in that it regulates by inappropriate means an area of conduct in which the state has no legitimate interest; and finally, it violates the first and fourteenth amendments of the United States Constitution, and Article 1, section 3, of the Pennsylvania Constitution in that it "tends toward an establishment of religion" and "interferes with an individual's right of conscience."

-A-

Several of appellant's arguments may be disposed of summarily.

4. Appellant raised all her constitutional arguments in her omnibus pre-trial motion. They are therefore properly presented to this court for our consideration. *Cf. Commonwealth v. Danko*, 281 Pa.Super. 97, 421 A.2d 1165 (1980).

Appellant was charged with violating section 5902(a)(1) of the Crimes Code in that she "engaged in sexual activity as a business." She was not charged under section 5902(a)(1) as "an inmate of a house of prostitution," nor was she charged with violating section 5902(a)(2) (loitering for purpose of being hired to engage in sexual activity). While a defendant in an enforcement proceeding generally has standing to assert in his defense any claim, including the constitutionality of a statute, that challenges the authority of the state to impose its force upon him, he does not have standing to object to the constitutionality of a statute unless he is affected by the particular feature alleged to be in conflict with the constitution. *Commonwealth v. Haldeman*, 288 Pa. 81, 135 A. 651 (1927); *Commonwealth v. Dollar Savings Bank*, 259 Pa. 138, 102 A. 569 (1917); *Mesta Machine Co. v. Dunbar Furnace Co.*, 250 Pa. 472, 95 A. 585 (1915); *Smith v. Yellow Cab Co.*, 87 Pa. Super. 143 (1926), *aff'd* 288 Pa. 85, 135 A. 858 (1927). *Cf. Commonwealth v. Van Emburg*, 467 Pa. 445, 359 A.2d 178 (1976); *Commonwealth v. MacDonald*, 464 Pa. 435, 347 A.2d 290, *cert. denied* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1975). Accordingly, we shall not consider appellant's arguments regarding the constitutionality of those portions of section 5902(a) making it criminal to be "an inmate of a house of prostitution" or to "loiter[ ] in or within view of any public place for the purpose of being hired to engage in sexual activity."

Since appellant's argument that section 5902(a) is susceptible to improper application by law enforcement officials and so results in a "chilling" of the first amendment rights of speech, association, and assembly is apparently exclusively based on section 5902(a)(2), we shall not consider this argument either.

Appellant does have standing to argue that the term "sexual activity as a business" in section 5902(a)(1) is so vague that to punish her for such activity violates the fifth and fourteenth amendments of the United States Constitution. However, we find no merit in the argument. The Constitution requires that a statute be definite enough to

provide a person of ordinary intelligence with fair notice of the type of conduct proscribed. *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972), *United States v. Harriss,* 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954), *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940), *Herndon v. Lowry,* 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937), *Commonwealth v. De Francesco,* 481 Pa. 595, 393 A.2d 321 (1978). In deciding whether such notice has been provided here, we are not limited to a consideration of the language of section 5902(a)(1) alone. For unless it involves an infringement of first amendment freedoms of speech, association, and assembly, the definiteness of a statute will be decided in light of the conduct in which the party challenging the statute has engaged. *Commonwealth v. Hughes,* 468 Pa. 502, 364 A.2d 306 (1976); *Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244 (1976); *see also, United States v. Mazurie,* 419 U.S. 544, 95 S.Ct. 710, 42 L.Ed.2d 706 (1975); *Note, The First Amendment Overbreadth Doctrine,* 83 Harv.L.Rev. 844 (1970). Here that conduct consisted of appellant offering to engage in sexual intercourse with men she did not know, for the paid-in-advance consideration of $200. We conclude that the prohibition in section 5902(a)(1) against "engag[ing] in sexual activity as a business" provided appellant, and the arresting officers, with fair notice that appellant's conduct was proscribed. *See e. g., Commonwealth v. Danko,* 281 Pa.Super. 97, 421 A.2d 1165 (1980), *Commonwealth v. Israeloff,* 8 D&C 3d 5 (1978); *Commonwealth v. Dougan,* 5 D&C 3d 406 (1977); *see also, Commonwealth v. Lavery,* 247 Pa. 139, 93 A. 276 (1915); *Commonwealth v. Robertson,* 178 Pa.Super. 281, 116 A.2d 224 (1955); *Commonwealth v. Stingel,* 156 Pa.Super. 359, 40 A.2d 140 (1944).

Appellant's argument that section 5902 violates the equal protection clause of the fourteenth amendment of the United States Constitution and the equal rights amendment of the Pennsylvania Constitution because it provides for disproportionate punishments based on gender classification between the female prostitute and the male patron and pro-

moter of prostitution has already been decided against her. In *Commonwealth v. Finnegan*, 280 Pa.Super. 584, 421 A.2d 1086 (1980), we held that the difference in punishment is

> based upon the separate roles played by the prostitute, client, and promoter [and that this] classification bears a rational relationship to the avowed objective of eliminating this form of crime. Indeed an analogous dichotomy exists in the penalty provisions of the Controlled Substance, Drug, Device, and Cosmetic Act in this Commonwealth, in which a greater penalty is imposed upon the "pusher" or provider of the contraband than upon one who merely purchases or possesses the material. *Compare* Act of April 14, 1972, P.L. 233, § 13(a)(16) *with* § 13(a)(30), 35 P.S. § 780–113(a)(16)(30). Thus, we believe that the legislatively-employed method of punishing the prostitute and promoter as the providers of the sexual services to a greater extent than the client who purchases such services is rationally related to the legitimate purpose of eliminating prostitution and maintenance of the public health, safety, morals and general welfare.

*Id.*, 280 Pa.Super. at 593, 421 A.2d at 1090.

Finally, we dismiss as frivolous appellant's argument that section 5902(a)(1) "tends toward an establishment of religion" and "interferes with an individual's right of conscience."

-B-

Appellant's arguments that section 5902(a)(1) violates the right of privacy guaranteed by the first, ninth, and fourteenth amendments of the United States Constitution and Article I, section 9, of the Pennsylvania Constitution, and the fifth and fourteenth amendments of the United States Constitution in that it regulates by inappropriate means an area of conduct in which the state has no legitimate interest, are related and will be considered together.

The United States Supreme Court has long recognized that one aspect of due process of law is that a statute must be rationally related to a legitimate governmental end. *See,*

*e. g., Williams v. Standard Oil Co.*, 278 U.S. 235, 49 S.Ct. 115, 73 L.Ed. 287 (1929); *Adams v. Tanner*, 244 U.S. 590, 37 S.Ct. 662, 61 L.Ed. 1336 (1917) *overruled, Ferguson v. Skrupa*, 372 U.S. 726, 83 S.Ct. 1028, 10 L.Ed.2d 93 (1963), 95 A.L.R.2d 1347. During one period of its history, the Court repeatedly found that a statute did not meet this test because, in the Court's opinion, the legislature had employed "inappropriate" means or pursued "unnecessary" ends. *See, e. g., Morehead v. New York ex rel. Tipaldo*, 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347 (1936) (due process prohibits minimum wage for women workers); *Williams v. Standard Oil Co., supra* (due process prohibits setting maximum legal price for sale of gasoline); *Adkins v. Children's Hospital*, 261 U.S. 525, 43 S.Ct. 394, 67 L.Ed. 785 (1923) (due process prohibits minimum wage for women workers); *Coppage v. Kansas*, 236 U.S. 1, 35 S.Ct. 240, 59 L.Ed. 441 (1915) (due process prohibits state from banning "yellow-dog" contracts); *Lochner v. New York*, 198 U.S. 45, 61, 25 S.Ct. 539, 544, 49 L.Ed. 937 (1905) (due process prohibits setting maximum hours for bakers because Court did "not believe in the soundness of the state's views").

This view of due process became subject to considerable criticism, *see, e. g., Phelps Dodge Corp. v. N.L.R.B.*, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941); *West Coast Hotel Co. v. Parrish*, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937); *Lochner v. New York*, 198 U.S. at 75, 25 S.Ct. at 546 (HOLMES, J. dissenting), and was at least in most cases ultimately abandoned, the Court instead adopting a "mere rationality" standard under which it would uphold the constitutionality of a state statute so long as the statute bore some rational relationship to a valid state interest. *See, e. g., Ferguson v. Skrupa, supra* (sustained Kansas statute limiting business of debt adjusting to all but lawyers); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955) (sustained Oklahoma statute prohibiting the fitting and duplicating of lenses except by licensed optometrist or opthamologist); *Day-Brite Lighting v. Missouri*, 342 U.S. 421, 72 S.Ct. 405, 96 L.Ed. 469 (1952) (sustained election

day holiday statute); *Lincoln Fed. Labor Union v. North-western Iron & Metal Co.*, 335 U.S. 525, 69 S.Ct. 251, 93 L.Ed. 212 (1949) (sustained Nebraska and North Carolina "right-to-work" statutes); *Olsen v. Nebraska*, 313 U.S. 236, 61 S.Ct. 862, 85 L.Ed. 1305 (1941) (sustained Nebraska statute setting maximum fees chargeable by employment agencies because the "wisdom, need, and appropriateness of this legislation was for the state legislature to determine").

Where, however, the Court finds that the statute in question affects any personal right guaranteed by the Constitution, it will continue to examine the "need" for and "appropriateness" of the statute, and will require the state to demonstrate a "compelling state interest". One personal right warranting such heightened scrutiny is the right to privacy. Thus, in *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), in holding constitutional a statute that made the use of contraceptives a criminal offense, the Court stated:

> We do not sit as a super-legislature to determine the wisdom, need, and propriety of laws that touch economic problems, business affairs, or social conditions. This law, however, operates directly on an intimate relation of husband and wife and their physician's role in one aspect of that relation.

381 U.S. at 482, 85 S.Ct. at 1680.

*See also, Roe v. Wade*, 410 U.S. 113, at 155–156, 93 S.Ct. 705, 727–728, 35 L.Ed.2d 147 (1973).

Appellant's argument is that in regulating private consensual sexual activity between adults, section 5902(a)(1) violates her right to privacy, and that it therefore must be held unconstitutional unless the Commonwealth can demonstrate that it serves a compelling state interest.

The right to privacy is not one of the personal rights expressly guaranteed by the Constitution. However, the United States Supreme Court has found that one aspect of "liberty" under the due process clauses of the fifth and fourteenth amendments is some degree of "personal privacy, or guarantee of certain areas or zones of privacy." *Carey v.*

*Population Services International,* 431 U.S. 678, 684, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977), *quoting Roe v. Wade, supra,* 410 U.S. at 152, 93 S.Ct. at 726. The Court has said that the right to privacy includes "the interest in independence in making certain kinds of important decisions," *Carey v. Population Services International, supra,* 431 U.S. at 684, 97 S.Ct. at 2016, *quoting Whalen v. Roe,* 429 U.S. 589, 599–600, 97 S.Ct. 869, 876–877, 51 L.Ed.2d 64. Illustrative of such important decisions are "[t]he decision whether or not to beget or bear a child," *Carey v. Population Services International, supra,* 431 U.S. at 685, 97 S.Ct. at 2016, and also, decisions relating to marriage, *Loving v. Virginia,* 338 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), family relationships, *Prince v. Massachusetts,* 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944), and child rearing and education, *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). So far the Court has proceeded on a case-by-case basis, so that "the outer limits of [the right] have not been marked." *Carey v. Population Services International, supra,* 431 U.S. at 684, 97 S.Ct. at 2016. In the course of this development, however, the Court has expressly rejected the argument that the right is implicated, so that a state must demonstrate a compelling state interest, whenever a statute affects "adult sexual relations." *Id.* at fn. 5. *But cf. id.* at 705, 97 S.Ct. at 2026 (POWELL, J., concurring in part). *See also, Doe v. Commonwealth's Attorney,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) (summarily affirming three judge federal district court decision dismissing challenge by male homosexuals to statute forbidding sodomy).

■ Here we have no difficulty in concluding that section 5902(a) does not violate appellant's right to privacy. Under the section, the proscribed activity is *not* sexual activity but the *business* of engaging in sexual activity for hire. *Commonwealth v. Danko, supra,* 281 Pa.Super. at 104, 421 A.2d at 1168–69. Whatever may be the "outer limits" of the right to privacy, the decision whether to enter the business of engaging in sexual activity for hire is not the "kind[ ] of

important decision [ ]" included within the right. As a commercial regulation, section 5902(a) does not preclude any personal activity protected by the Constitution. It can hardly be maintained that appellant is deprived of a constitutional right to engage in intimate sexual relations merely because she is prohibited from charging a fee for such conduct.[5]

Since section 5902(a) does not violate appellant's right to privacy, the Commonwealth is only required to show that the section bears some rational relationship to a valid state interest. *Ferguson v. Skrupa, supra.*

The evils that have been perceived as associated with prostitution are numerous. As stated in the Comment to the Model Penal Code:

5. A state may by its constitution afford greater protection of privacy than is afforded by the federal Constitution. *See, Commonwealth v. Triplett*, 462 Pa. 244, 341 A.2d 62 (1975), *Brophy v. Philadelphia Newspapers, Inc.*, 281 Pa.Super. 588, 611, 422 A.2d 625, 637 (1980) (SPAETH, J. concurring). Appellant argues that article I, section 9, of the Pennsylvania Constitution affords such protection. Article I, section 9, provides:

In all criminal prosecutions the accused hath a right to be heard by himself and his counsel, to demand the nature and cause of the accusation against him, to meet the witnesses face to face, to have compulsory process for obtaining witnesses in his favor, and, in prosecutions by indictment or information, a speedy public trial by an impartial jury of the vicinage; he cannot be compelled to give evidence against himself, nor can he be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land.

We find this provision irrelevant.

Appellant also argues that *Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47 (1980), provides support to her argument that Section 5902(a)(1) invades a constitutionally protected zone of privacy. In *Bonadio* the Supreme Court struck down a statute prohibiting voluntary deviate sexual intercourse between unmarried individuals. In the opinion of three justices, Chief Justice EAGEN and Justices LARSEN and KAUFFMAN, the statute was unconstitutional because it made a legislative classification based on marital status in violation of the equal protection clause. Justices O'BRIEN, ROBERTS and NIX dissented from this opinion. Justice FLAHERTY did say in his opinion that the statute was unconstitutional because private consensual sexual activity was not a matter of legitimate concern to the state and therefore was beyond its power to regulate, but none of the other Justices joined him. We therefore conclude that *Bonadio* is not on point.

Prostitution is an important source of venereal disease.... [P]rostitution is a source of profit and power for criminal groups who commonly combine it with illicit trade in drugs and liquor, illegal gambling and even robbery and extortion. Prostitution is also a corrupt influence on government and law enforcement machinery. Its promoters are willing and able to pay for police protection; and unscrupulous officials and politicians find them an easy mark for extortion. Finally, some view prostitution as a significant factor in social disorganization, encouraging sex delinquency and undermining marriage, the home, and individual character.

A.L.I. Model Penal Code, § 207.12 Tent. Draft No. 9, Comment at 171 (1959) (footnotes omitted).

Appellant characterizes these evils as "myths," Brief for Appellant at 31, and cites studies suggesting that it would be wiser to decriminalize prostitution than prohibit it. The arguments in favor of this position include:

(1) Prostitution cannot be eliminated by law.

(2) Sumptuary laws that cannot be generally enforced lend themselves to extortion and arbitrary and episodic prosecution.

(3) Failure to provide a professional outlet for male sexuality will result in more rape and other sexual crimes.

(4) Registration and periodic health inspection are the best means of controlling venereal disease; disease is much more likely to be spread by the promiscuous amateur than by professional prostitutes concerned and instructed to avoid infection.

(5) Legalized prostitution offers less opportunity for official corruption than an unrealistic effort at total repression.

(6) By confining prostitution to particular neighborhoods police surveillance is facilitated and the safety of the general community is promoted.

A.L.I. Model Penal Code, § 207.12 Tent. Draft No. 9, Comment at 171 (1959) (footnotes omitted).

The weight to be given these arguments, however is not for us but the legislature. Certainly it may not be said that the legislature's rejection of them is irrational. The American Medical Association has concluded that the control of venereal disease requires the elimination of prostitution because, it found, medical inspection of prostitutes is ineffectual, and while giving a false sense of security, fails to prevent the spread of infection. *Id., citing* statement of Dr. W. Clarke, Executive Director, Amer. Soc. Hyg. Ass'n., Hearings Before Subcommittee No. 3 of the House Committee on the Judiciary, on H.R. 5234, 79th Cong.2d Sess. 29 (1946). *See also*, Flexner, *Prostitution in Europe* (1913) 220, 225–227. Moreover, the legislature could rationally conclude that to legalize prostitution might imply that the state both recognized and condoned promiscuous sexual relations as a social necessity. *See, The Wolfenden Report*, 157–58 (American edition, 1963). Such an attitude might be seen as inconsistent with the goal of discouraging sexual delinquency, for as prostitution was encouraged, more money might be invested in it, and more persons participate, both as prostitutes and as patrons of prostitutes. *See id.* Such an outcome would have a deleterious effect not only on public health and morals but also because the business of prostitution would compete with other, more socially constructive, businesses for the limited resources of capital and labor. Finally, we note that an overwhelming majority of the states and the authors of the Model Penal Code have come to the conclusion that prostitution should be prohibited. *See Wharton's Criminal Law* (14th Ed. 1979) § 271.

## II.

Appellant's argument in support of her motion for mistrial is as follows. In response to the District Attorney's question concerning his assignment with the Pennsylvania State Police Department, Trooper Gentile stated that he "investigated general vice activities, including prostitution, gambling, et cetera, organized crime detail." R. 138. Appellant argues that the jury could infer from this statement

that appellant had engaged in prior criminal activity. Brief for Appellant at 42.

However, the investigation of crime is a principal activity of the police. Nothing in Gentile's statement implied that he had previously investigated appellant. We therefore see no basis for the jury inferring that appellant had engaged in prior criminal activity. Moreover, the trial judge instructed the jury that they were not to make such an inference. N.T. at 11. In these circumstances we find no error in the denial of appellant's motion for mistrial. *See Commonwealth v. Fultz*, 478 Pa. 207, 216, 386 A.2d 513, 517 (1978).[6]

Affirmed.

---

**6.** Appellant also argues that her violation of Section 5902(a)(1) was de minimis under 18 Pa.C.S. § 312. Brief for Appellant at 40. She has not supported this argument with any authority. It is apparent that appellant's activity fell squarely within the prohibition of Section 5902(a)(1). We therefore find no basis for concluding that her offense was de minimis.