COMMONWEALTH vs. CHERIE M. WALTER.

Middlesex.   December 6, 1982. — March 14, 1983.

Present: HENNESSEY, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Massage.   Prostitution.   Privacy.   Constitutional Law*, Privacy.   *Due Process of Law*, Vagueness of statute.   *Words*, "Prostitution," "Sexual activity."

The act of performing a body massage which included performing masturbation upon a person's genitals, by use of another's hands only, for a fee, constituted prostitution within the meaning of G. L. c. 272, § 53. [463-464]

The conviction of a defendant for prostitution under G. L. c. 272, § 53, based on her performing a genital massage upon another, for a fee, in her apartment did not interfere with her constitutional right to privacy. [464-465]

General Laws c. 272, § 53, as applied to the defendant who, in the privacy of her apartment, performed a genital massage on another for a fee and, as a result, was charged with prostitution, was not unconstitutionally vague. [465-466]

At a trial on a complaint charging the defendant with advertising the business of massage without being licensed, in violation of G. L. c. 140, § 51, a newspaper advertisement of the defendant's massage business, admitted as an operative fact to show that it was published, not that its contents were true, was properly admitted in evidence and, when coupled with testimony that the defendant was the person who had advertised and that no license had even been issued to the defendant, or to the premises at which the massage took place, was sufficient to support her conviction under § 51. [466-467]

COMPLAINTS received and sworn to in the Third Eastern Middlesex Division of the District Court Department on February 25, 1981.

In the jury session, the cases were tried before *Murphy*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court ordered direct appellate review on its own initiative.

*Henry P. Sorett* for the defendant.

*Kevin J. Ross,* Legal Assistant to the District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant appeals from her conviction by a jury on two complaints. One complaint charged her with engaging in common, indiscriminate sexual activity for hire, in violation of G. L. c. 272, § 53.[1] The other charged her with advertising the business of massage without being licensed, in violation of G. L. c. 140, § 51.[2] She was sentenced to two concurrent thirty-day terms at the Massachusetts Correctional Institution, Framingham. Her motion to stay the sentence pending appeal was denied.[3] We transferred the case from the Appeals Court on our own motion. We affirm the convictions.

The parties filed a statement of agreed facts, which we summarize as follows. On January 28, 1981, Officer James Walsh of the Cambridge police department received a radio call. In response, Officer Walsh changed into civilian clothes and went to the detective bureau of the Cambridge police department. There, Detective Anthony Bombino showed him a copy of an advertisement appearing in the January 27, 1981, edition of the Boston Phoenix newspaper, which read: "Swedish & Shiatsu Massage in Harvard Square Chris 661-____." The newspaper advertisement was admitted in evidence over the defendant's objection.

---

[1] General Laws c. 272, § 53, as amended through St. 1973, c. 1073, § 20, provides in pertinent part: "[P]rostitutes . . . may be punished by imprisonment . . . for not more than six months . . . ." The complaint originally charged the defendant with prostitution. Since *Commonwealth* v. *King,* 374 Mass. 5, 12 (1977), defined prostitution as common, indiscriminate sexual activity for hire, the amendment of the complaint served no purpose.

[2] General Laws c. 140, § 51, as appearing in St. 1947, c. 253, provides in pertinent part: "No person shall practice massage . . . or advertise . . . as being engaged in the business of massage . . . without receiving a license therefor from the board of health of the town where the said occupation is to be carried on . . . ."

[3] Since the sentence has now been entirely served, the petitioner has briefed and argued only those issues which would entitle her to dismissal or a required finding of not guilty, and waives any issue which would entitle her to a new trial.

Officer Walsh placed a telephone call to 661-____, and asked to speak to "Chris." The person who answered the telephone stated that she was "Chris." Officer Walsh told her that he was answering the advertisement in the Boston Phoenix and that he was interested in getting a massage. "Chris" asked him if he was really interested in getting a massage, and he said, "Yes." "Chris" told him an address on Massachusetts Avenue, apartment 24, and that the massage would cost $30. Detective Bombino saw Officer Walsh call 661-____, and heard his conversation.

Officer Walsh went to the address in an unmarked police car with Detective Bombino and two other policemen. He pressed the buzzer for apartment 24, and a woman, whom he later identified as the defendant, came to the door. He asked if she were the "Chris" with whom he had just spoken, and she said, "Yes. Why don't you come up?" He followed her to apartment 24, where he saw a man sitting in the bedroom clothed only in pants. After a brief conversation with the defendant, the man put on the rest of his clothing and left.

The defendant invited Officer Walsh into the bedroom, and told him to get undressed. She asked him for $30, which he gave her. She massaged his body generally, using her hands and some oil. During the course of the massage she removed her shirt and was naked from the waist up. She then massaged his genitals, in an act of masturbation, for about forty-five seconds. Officer Walsh then got off the bed and said he was a police officer, and that she was under arrest for prostitution. During the arrest Detective Bombino gained entry to the apartment and seized two telephones bearing the number 661-____ from the apartment.

Joseph Nicoloro testified that he was the senior sanitary inspector for the city of Cambridge, and was responsible for keeping records of licenses granted to masseuses, masseurs and massage parlors in the city. He further testified that no license had ever been granted to the defendant or to the premises at which she was arrested.

In response to a motion by the defendant, the Common-wealth filed a bill of particulars alleging, as the basis for the complaint charging common, indiscriminate sexual activity for hire, that the defendant "for thirty dollars did massage Officer Walsh and in the course of that massage did mastur-bate his penis with her hands." Prior to trial, the defendant moved to dismiss this complaint on the ground that the complaint and bill of particulars did not allege an offense within the meaning of G. L. c. 272, § 53. The motion was denied, as was a motion to dismiss the complaint under G. L. c. 140, § 51. A motion for required findings of not guilty made at the close of the Commonwealth's case was also denied.

The defendant argues that a full body massage which in-cludes the genitals, by use of the hands only, for a fee, is not prostitution within the meaning of the statute. In *Com-monwealth* v. *King*, 374 Mass. 5, 12 (1977), we noted that the Legislature had not defined prostitution, and so turned to common understanding for definition of the term. We concluded that prostitution is "common indiscriminate sex-ual activity for hire." See *Commonwealth* v. *United Food Corp.*, 374 Mass. 765, 767 (1978); *Commonwealth* v. *Bucaulis*, 6 Mass. App. Ct. 59, 65-66, cert. denied, 439 U.S. 827 (1978). The defendant does not argue that her acts were not common, indiscriminate, or for hire, but rather that they were not "sexual activity." She argues that "sex-ual activity" is confined to coitus or oral-genital contact.

The language of *King* — "sexual activity" — is broad, and by common understanding, includes the conduct in-volved here. See *People* v. *Costello*, 90 Misc. 2d 431, 433 (N.Y. Sup. Ct. 1977) (statute defines prostitution as sexual conduct for a fee; common understanding of sexual conduct includes sexual intercourse, deviate sexual intercourse, and masturbation). We relied on *Commonwealth* v. *Cook*, 12 Met. 93, 97 (1846), to support our definition of prostitution in *King*. *Cook* defined prostitution in part as offering one's body to an "indiscriminate intercourse" and "offering to indiscriminate lewdness."

We conclude that prostitution includes performing masturbation upon a person's genitals by another's hands, for a fee. The term "sexual activity," resting as it does on the common understanding of the meaning of prostitution, and on *Commonwealth* v. *Cook, supra,* includes such acts. Accordingly, we reject the defendant's contention that the acts proved were not prostitution within the meaning of G. L. c. 272, § 53.

The defendant next argues that prohibition of her activities interferes with her constitutional right to privacy. She relies on decisions of the United States Supreme Court, based on the United States Constitution, as well as on *Commonwealth* v. *Ferguson,* 384 Mass. 13, 15-16 (1981), and *Commonwealth* v. *Balthazar,* 366 Mass. 298, 302 (1974), in which we held that G. L. c. 272, § 35, which prohibits "unnatural and lascivious acts," does not apply to private consensual conduct of adults. The defendant's prostitution conviction is based on the massage she gave Officer Walsh in her apartment. In *Commonwealth* v. *King, supra* at 14, we held that, since the defendants' convictions were based on solicitation "in a place to which the public had access . . . their convictions, relying on no private conduct, implicate no constitutionally protected rights of privacy." See *State* v. *Allen,* 37 Conn. Supp. 506 (1980); *United States* v. *Moses,* 339 A.2d 46, 50 (D.C. 1975), cert. denied, 426 U.S. 920 (1976); *People* v. *Johnson,* 60 Ill. App. 3d 183, 189-190 (1978). In *King, supra* at 14, we did not decide whether a conviction of prostitution based on the performance of sexual acts for hire in private would violate any constitutional right of privacy.

The scope of the right to privacy under the United States Constitution is not well defined. However, whatever protection it affords to the private, sexual activities of consenting adults, we conclude that the defendant's activities were not protected, because they were performed for a fee. We will not extend a constitutional right to privacy to one who indiscriminately performs sexual acts for hire. See *Stratton* v. *Drumm,* 445 F. Supp. 1035, 1039 (D. Conn. 1978);

*Brown* v. *Haner*, 410 F. Supp. 399, 401 (W.D Va. 1976); *MRM, Inc.* v. *Davenport*, 290 N.W.2d 338, 347-348 (Iowa 1980); *State* v. *Price*, 237 N.W.2d 813, 818 (Iowa), appeal dismissed, 426 U.S. 916 (1976); *Commonwealth* v. *Dodge*, 287 Pa. Super. 148, 155-159 (1981); *Tisdale* v. *State*, 640 S.W.2d 409, 412-414 (Tex. App. 1982). Commercial sex is performed for profit and the sexual contact involved is incidental to that profit. The impersonal nature of the performance of commercial sex, such as was involved here, is indicated by the fact that anyone willing to pay could enter the defendant's apartment and receive a genital massage. The decision to engage in the business of sex for money is not the type of intimate, personal decision which is protected by the right to privacy. See *State* v. *B Bar Enters.*, 133 Ariz. 99, 101 (1982); *State* v. *Gaither*, 236 Ga. 497, 498 (1976); *State* v. *Price, supra*; *Commonwealth* v. *Dodge, supra*. Cf. *Paris Adult Theatre I* v. *Slaton*, 413 U.S. 49, 68 n.15 (1973). Our analysis is equally applicable to a sexual privacy right established under State law. Consequently, we conclude that the conviction of the defendant for prostitution based on her performing a genital massage for a fee did not interfere with her right of privacy.

The defendant further contends that G. L. c. 272, § 53, is vague as applied to the genital massage she gave Officer Walsh in private. "A law is unconstitutionally vague if it is not sufficiently explicit to give clear warning as to proscribed activities. . . . A law is not vague, however, if it requires a person to conform his conduct to an imprecise but comprehensive normative standard so that men of common intelligence will know its meaning" (citations omitted). *Commonwealth* v. *Orlando*, 371 Mass. 732, 734 (1977). The question is whether the language of § 53 and our prior decisions would have indicated to an individual of common intelligence that the acts charged were prostitution. There was no indication in *Commonwealth* v. *King*, 374 Mass. 5 (1977), that "sexual activity" did not encompass all acts commonly understood to be described by the term, including masturbation. The defendant cannot rely on the hypo-

thetical application of § 53 to other activities to support her claim that the term "prostitution" was vague as applied to her. Nor has a right to privacy been applied to commercial sex by this court or by the United States Supreme Court. We did not decide the question in *King,* because it was not before us. *Id.* at 14. We did not thereby suggest that such a right applies to acts of prostitution conducted behind closed doors. Consequently, we conclude that the statute was not vague as applied.

The defendant challenges the admission in evidence of the advertisement which appeared in the Boston Phoenix newspaper, on the ground that it was hearsay, and argues that without the improperly admitted advertisement she was entitled to a required finding of not guilty of the charge of advertising as a masseuse without a license. The advertisement was admitted over the defendant's objection after Officer Walsh testified that he was shown a copy of the January 27, 1981, edition of the Boston Phoenix containing the advertisement.

It is apparent that the advertisement was not admitted to prove that the contents of the advertisement were true. The essence of the alleged violation of G. L. c. 140, § 51, was advertising as a masseuse without a license to do so. The mere existence of the advertisement was significant under the statute. The advertisement was, accordingly, admissible as an operative fact to show that it was published, not that its contents were true. See *Commonwealth* v. *Leaster,* 362 Mass. 407, 411-412 (1972); *Commonwealth* v. *Leonard,* 352 Mass. 636, 644 n.6 (1967); *Galvin* v. *New York, N.H. & H. R.R.,* 341 Mass. 293, 294-295 (1960); *Glassman* v. *Barron,* 277 Mass. 376, 382 (1931). The proof submitted to support the jury's inference that the defendant was the person who advertised was not the truth of the contents of the advertisement, but the testimony of Officer Walsh that he called the number in the advertisement and spoke to someone who identified herself as "Chris"; that he went to the address given, and was met by a woman who said she was the "Chris" with whom he had just spoken; and that this

woman was the defendant. This evidence, coupled with Joseph Nicoloro's testimony that no license had ever been issued to the defendant, or to the premises at which she was arrested, was sufficient to support the conviction under G. L. c. 140, § 51.

*Judgments affirmed.*