NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

SJC-12529

COMMONWEALTH vs. JONATHAN E. BROWN.

Essex.      October 2, 2018. - December 11, 2018.

Present (Sitting at Worcester): Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher, & Kafker, JJ.


Deriving Support from Prostitution. Statute, Construction. Constitutional Law, Vagueness of statute. Practice, Criminal, Instructions to jury, Request for jury instructions, Argument by prosecutor. Words, "Pimping."



Complaint received and sworn to in the Lynn Division of the District Court Department on June 22, 2012.

Following review by the Appeals Court, 90 Mass. App. Ct. 1107 (2016), the case was tried before Michael A. Patten, J.

The Supreme Judicial Court granted an application for direct appellate review.


David M. Osborne for the defendant.
Emily R. Mello, Assistant District Attorney, for the Commonwealth.
Maura Healey, Attorney General, & Maria Granik, Assistant Attorney General, for the Attorney General, amicus curiae, submitted a brief.

KAFKER, J.  For over a century the Commonwealth has outlawed living off of or otherwise sharing in money earned by a known prostitute.[1]  Historically, "pimps or purveyors" have been understood to be the objects of this prohibition, although no definition of either "pimp" or "purveyor" has ever appeared in the statutory text, currently codified at G. L. c. 272, § 7.[2] Claiming that, without further clarification, the language of this statute is unconstitutionally vague and that he suffered prejudice from jury instructions tracking such language, the defendant, Jonathan E. Brown, seeks reversal of his conviction on a single count of deriving support from prostitution under G. L. c. 272, § 7.  We disagree and affirm.

We conclude that G. L. c. 272, § 7, is constitutional, as we construe it to target those who, <u>with the intent to profit from prostitution</u>, live or derive support or maintenance from, or share in the earnings or proceeds of, the known prostitution

---

[1] Throughout this opinion we use the term "prostitute" to refer to a person who engages or offers to engage in sexual conduct with another person for a fee because that term appears in the statutory text.

[2] The statute provides that "[w]hoever, knowing a person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of his [(i.e., that person's)] prostitution . . . or shall share in such earnings [or] proceeds . . . shall be punished by imprisonment in the state prison for a period of five years . . . .  The sentence of imprisonment . . . shall not be reduced to less than two years . . . ."  G. L. c. 272, § 7.

of others.  We reach this conclusion from reading the statutory language in the context of common understanding and ordinary usage, as well as the statute's legislative history and severe penalty provisions, all of which demonstrate with sufficient clarity that G. L. c. 272, § 7, is directed at so-called "pimping."  Because a pimp knowingly and intentionally profits from the prostitution of another, he or she differs from the child of a sex worker, a local merchant who sells food to a known sex worker, or a medical professional who provides a sex worker with counselling services; the literal language of the statute may reach all of these individuals, but, unlike a pimp, they lack the intention to profit from the prostitution of another.

Here, the evidence was sufficient for the jury to conclude that the defendant -- who accompanied a woman to a prearranged prostitution transaction and was caught, immediately after leaving the scene with that woman, with the entire proceeds of the transaction hidden in his shoe -- knowingly and intentionally profited from the prostitution of another, and therefore engaged in pimping within the meaning of G. L. c. 272, § 7.  While we prospectively clarify the jury instructions to avoid any possible confusion that this statute might apply to those who lack such an intent, we discern no prejudicial or other reversible error in the instant case.

1.  Facts.  The facts, in the light most favorable to the Commonwealth, are as follows.  See Commonwealth v. Latimore, 378 Mass. 671, 677 (1979).

On June 21, 2012, as part of a national antiprostitution "sting" operation, law enforcement officers arranged to meet two women at a hotel in Saugus after responding to Internet advertisements for female prostitution.  Police were instructed to watch for two women arriving at the Saugus hotel, and that evening, a police surveillance team observed two women, the defendant, and another man arrive at the hotel in a black motor vehicle.  The two men waited in the vehicle in the rear parking lot of the hotel while the women went inside to a hotel room.  There, another surveillance team observed as an undercover officer, posing as a customer, agreed with one of the women to have sex for $250.  The officer handed the woman $250 in cash, after which he answered a prearranged telephone call and told the two women they had to leave.  The women returned to the vehicle and were driven away with the defendant.[3]  The police stopped the vehicle and, after frisking the defendant, found the

---

[3] On direct examination, a police officer identified the defendant as the driver of the vehicle, but on cross-examination, after having his memory refreshed from testimony at an earlier proceeding, he explained that the defendant was in either the driver's seat or the front passenger's seat.

same $250 that the officer had given the woman as payment for sex hidden in the defendant's shoe.

The defendant was subsequently charged and convicted at a bench trial of deriving support from prostitution under G. L. c. 272, § 7,[4] but his conviction was reversed by the Appeals Court in an unpublished memorandum and order pursuant to its rule 1:28 due to the prosecution's errors in its closing argument. See Commonwealth v. Brown, 90 Mass. App. Ct. 1107 (2016). Before his second trial, the defendant moved to dismiss the charge, claiming that the statute was unconstitutional for vagueness. That motion was denied. At the second trial, which was tried before a jury, the defendant moved for a required finding of not guilty, relying on the Appeals Court decision in Commonwealth v. Thetonia, 27 Mass. App. Ct. 783 (1989), which examined the meaning of the terms "pimp or purveyor" as set out in the statute's legislative history. That motion was also denied. Finally, relying again on Thetonia, the defendant sought supplementary instructions that would change Instruction 7.140 of the Criminal Model Jury Instructions for Use in the District Court (2009) (model jury instruction 7.140). The defendant's requested instruction, based on model jury

---

[4] The defendant was also charged with trafficking of a person for sexual servitude in violation of G. L. c. 265, § 50 (a), but this charge was dismissed before the first trial, and a nolle prosequi was entered before the second trial.

instruction 7.140, with his requested supplementary language emphasized, is as follows:

"Deriving Support from Prostitution

"The defendant is charged with knowingly deriving support from the earnings of a prostitute. This is commonly known as the 'pimping' statute. Chapter 7 of Section 272 of our General Laws provides as follows: 'Whoever, knowing a person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of his prostitution . . . or shall share in such earnings or proceeds . . . shall be punished.'

"In order to prove the defendant guilty of this offense, the Commonwealth must prove three [(and with the requested changes, four)] things beyond a reasonable doubt:

"First, that a particular person was engaged in prostitution. A prostitute is a person who engages in common, indiscriminate sexual activity for hire.

"Second, The Commonwealth must prove beyond a reasonable doubt that the defendant knew [(emphasis in original)] that such person was a prostitute; and

"Third, The Commonwealth must prove beyond a reasonable doubt that the defendant shared in some substantial way in the earnings or proceeds from that person's prostitution.

"Fourth, The Commonwealth must prove beyond a reasonable doubt that the Defendant played a substantial role in facilitating this person's prostitution. For example, it is not enough if the Defendant simply drove the prostitute to a job."

The judge denied the requested supplementary instructions and gave model jury instruction 7.140. The jury found the defendant guilty under G. L. c. 272, § 7, and this appeal followed.

2.  Discussion.  a.  Purpose of G. L. c. 272, § 7.  To determine the meaning of G. L. c. 272, § 7, we begin, as we must, with the statutory language, interpreted in light of "ordinary and approved usage" and "sound reason and common sense" (citations omitted).  Commonwealth v. Brown, 479 Mass. 163, 166-167 (2018).  The text of G. L. c. 272, § 7, imposes criminal liability when a person (1) knows another person is a prostitute; and (2) lives off or otherwise shares in money that the prostitute earned from prostitution activities or received from a brothel or its employees.  In other words, the statute plainly targets third parties who knowingly derive their livelihood or otherwise profit from prostitution.  In common vernacular and understanding, the statute appears to target "pimps."

The legislative history confirms such an understanding of this century old provision.  See Commonwealth v. Bundy, 465 Mass. 538, 545 (2013), quoting Perry v. Commonwealth, 438 Mass. 282, 285 (2002) ("We cannot interpret statutory language in a vacuum, ignoring the Legislature's purpose in enacting the statute and oblivious to 'the time in which [the language] is used'").  It expressly informs us that the statutory purpose of G. L. c. 272, § 7, is to target "pimps" who profit from "the business of commercialized prostitution." Report of the Commission for the Investigation of the White Slave Traffic, So

Called, 1914 House Doc. No. 2281, at 22 (1914 report).  A draft version of the original 1910 legislation, consistent with nearly identical contemporary legislation in other States, explicitly defines the prohibited conduct as "pimping."[5]  Also, a 1914 report commissioned by the Legislature recommended amending the 1910 statute to better prosecute "pimps and procurers," which it defined as "exploiters of women" who profit from "the business of commercialized prostitution." 1914 report, supra at 20, 22, 82-83.  See St. 1914, c. 621 (enacting proposed amendment).[6]

---

[5] "Any male person who, knowing a female person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of the prostitution of such prostitute, or from moneys loaned or advanced to or charged against such prostitution by any keeper or manager or inmate of a house or other place where prostitution is practised or allowed, or who shall tout or receive compensation for touting for such prostitute, shall be guilty of pimping . . ." (emphasis added).  An Act relative to the procuring and detaining of women for immoral purposes, 1910 House Bill No. 767, § 3.  While the draft legislation does not use the word "purveyor," § 1 of the draft legislation, a version of which is codified at G. L. c. 272, § 12, targets "pandering," defined as "procuring" women for prostitution purposes. See id. See also R.G. Latham, A Dictionary of the English Language 668 (1870) (defining "purveyor" as a "[p]rocurer; pimp").

Several other States have very similarly worded statutes dating from the same time period that define the proscribed conduct as "pimping."  See 1910 Cal. Stat. 10 (39th sess., c. 15); 1915 Del. Laws 2095; 1916 W. Va. Acts 1221.  For the intense contemporary concern with forced prostitution that inspired State antipimping legislation around this time, see B. Donovan, Respectability on Trial:  Sex Crimes in New York City, 1900-1918 at 108 (2016).

[6] Until 1977, G. L. c. 272, § 7, only applied to female prostitution.

Furthermore, G. L. c. 272, § 4B, which criminalizes living off of or sharing in the earnings of a prostitute who is a minor in language that parallels the language of G. L. c. 272, § 7, was introduced as a bill targeting "pimps."[7]  Finally, the title of the 1980 session law amending G. L. c. 272, §§ 6 and 7, is "An Act increasing the penalty for a so-called pimp or purveyor." St. 1980, c. 409.

Our case law has also recognized that the statutory language of G. L. c. 272, § 7, must be read in light of its purpose of proscribing pimping.  We made this point in passing when we upheld the penalty provision of the statute in Commonwealth v. Lightfoot, 391 Mass. 718, 720-721 (1984) (inferring legislative intent to increase penalties for deriving support or maintenance from prostitute "from the title of the act, 'An Act increasing the penalty for a so-called pimp or purveyor,' St. 1980, c. 409").  The Appeals Court, in Thetonia, further analyzed and clarified the statutory purpose of proscribing pimping when it reversed the conviction of a defendant who, while occasionally receiving small amounts of

---

[7] General Laws c. 272, § 4B, was introduced by the same legislator who sponsored a 1980 amendment to G. L. c. 272, § 7, as "An Act establishing a mandatory prison term for a pimp so-called, or purveyor or other who induces male and female minors to become prostitutes and who derives support from them."  1979 House Bill No. 6753.

money from her friend in exchange for driving her friend to prostitution activities, "did not . . . engage in pimping" within the meaning of the statute.  Thetonia, 27 Mass. App. Ct. at 786-787.

The severity of the penalty imposed for a felony conviction under G. L. c. 272, § 7 -- a five-year maximum sentence with a two-year mandatory minimum sentence -- provides further support that the statute is directed at the serious crime of pimping. By contrast, patronizing an adult prostitute and engaging in prostitution are both misdemeanors punishable by less severe sentences.[8]

The defendant is correct that G. L. c. 272, § 7, absent such construction, could literally be read to cover innocent conduct (e.g., the children of a sex worker who know what their parent does for a living, the local storekeeper who sells food or clothing to a known sex worker, or a medical professional providing counselling or other health care services to a sex worker).  We do not think, however, that the common understanding of the statutory text, combined with the clear and

---

[8] Patronizing a prostitute is punishable by a $5,000 maximum fine or a maximum sentence of two and one-half years, G. L. c. 272, § 53A (b), while engaging in prostitution is punishable by a $500 maximum fine or a one-year maximum sentence, G. L. c. 272, § 53A (a).  Under G. L. c. 272, § 62, however, a "common nightwalker" (i.e., a prostitute who works at night on the street) may receive a maximum sentence of two and one-half years if convicted three times of that offense.

express legislative antipimping purpose, would support its application in instances -- such as prosecuting a child for taking a sandwich from his or her mother -- that do not in any way involve pimping and which the defendant himself characterizes as "absurd." See Commonwealth v. Cassidy, 479 Mass. 527, 534, cert. denied, 139 S. Ct. 276 (2018) ("[w]e will not adopt a literal construction of a statute if the consequences of such construction are absurd or unreasonable" [citation omitted]). In any event, we do not interpret the prohibition on living off of or sharing in money received from a known prostitute to include the foregoing individuals, who may have knowledge of the prostitution and receive some support or money from the prostitute, but who, unlike a pimp, do not intend for the prostitution to occur.[9]

In short, pimping -- which we define as knowingly and intentionally profiting from the prostitution of another -- is

_____

[9] This interpretation is consistent with the holdings of appellate courts of other States. See, e.g., People v. Morey, 230 Mich. App. 152, 164 (1998), aff'd, 461 Mich. 325 (1999) (statute that prohibits profiting from prostitution containing knowledge requirement constitutional because it "could not reasonably be applied to entirely innocent conduct"); State v. Yancy, 92 Wash. 2d 153, 157 (1979) (statute criminalizing "profiting from prostitution" constitutional because it does not reach "persons engaged in legitimate pursuits" who, while they may receive money from prostitute, lack "an agreement or understanding . . . to participate in the proceeds of prostitution activity").

what the Legislature proscribed when enacting the statute that is now G. L. c. 272, § 7.

b.  Constitutionality of G. L. c. 272, § 7.  The defendant contends that G. L. c. 272, § 7, is unconstitutionally vague. We upheld the constitutionality of an earlier version of the statute shortly after its passage.  Commonwealth v. Peretz, 212 Mass. 253, 256 (1912).  See Lightfoot, 391 Mass. at 719 (holding penalty provision of statute constitutional); Commonwealth v. Roberts, 372 Mass. 868, 868 (1977) (observing that statute has been held plainly constitutional).  We now reaffirm the constitutionality of G. L. c. 272, § 7.

In order to prevail on a vagueness challenge, a defendant must show that a statute effects a due process deprivation by failing to provide (1) a reasonable opportunity for a person of ordinary intelligence to ascertain what the statute prohibits; and (2) comprehensible standards that limit prosecutorial and judicial discretion and thus avoid discriminatory or arbitrary enforcement.  Commonwealth v. Hendricks, 452 Mass. 97, 102 (2008).  A statute will not be found unconstitutionally vague, however, "if it requires a person to conform his conduct to an imprecise but comprehensible normative standard" or "conveys [a] sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices" (citations omitted).  Commonwealth v. McGhee, 472 Mass. 405, 414 (2015).  A

criminal statute will not "be construed so strictly as to defeat the obvious intention of the [L]egislature" (citation omitted), Commonwealth v. Great Atl. & Pac. Tea Co., 404 Mass. 476, 480 (1989), particularly "if its scope is substantially clear" despite "[u]ncertainty as to whether marginal offenses are included within the coverage of a statute" (citation omitted), McGhee, supra.  As we have often recognized, "[i]f a statute can be made constitutionally definite by a reasonable construction, the court is under a duty to give it that construction" (citation omitted).  Great Atl. & Pac. Tea Co., supra at 482.[10]

Here, we think it is sufficiently clear and definite in light of both common and historical understanding that G. L. c. 272, § 7, criminalizes pimping, that is, living off of or sharing in the earnings of a known prostitute with an intent to profit from that person's prostitution.  The defendant, citing what he calls "absurd" examples of third parties who might fall within the literal language of the statute (e.g., a child who

---

[10] Indeed, through judicial construction, we have upheld several prostitution-related sections of G. L. c. 272 as constitutional.  See Aristocratic Restaurant of Mass., Inc. v. Alcoholic Beverages Control Comm'n (No. 2), 374 Mass. 564, 568 (1978) ("immoral solicitation or immoral bargaining" provision of G. L. c. 272, § 26, not unconstitutionally vague); Commonwealth v. King, 374 Mass. 5, 10 (1977) ("prostitute" provision in G. L. c. 272, § 53, not unconstitutionally vague); Thomes v. Commonwealth, 355 Mass. 203, 207 (1969) ("common night walker" provision of G. L. c. 272, § 53, not unconstitutionally vague).

receives a meal paid for by his or her mother's sex work), contends that the statute is unconstitutionally vague "since on its face it criminalizes any financial relationship with a person known to be a prostitute." We decline, however, to consider a challenge that a criminal statute is "facially vague" when the defendant's "vagueness challenge to the statute does not involve a claim that an overbroad statute threatens interests protected by the First Amendment to the United States Constitution." Hendricks, 452 Mass. at 98 n.1. See Commonwealth v. Walter, 388 Mass. 460, 465-466 (1983) (court will consider whether statute is vague as applied to particular defendant, not "hypothetical application" of statute to others).[11] Here, the defendant did not raise a First Amendment argument. We thus reject his facial challenge to the statute.

Turning to the constitutionality of G. L. c. 272, § 7, as applied to the facts of the defendant's case, we likewise find no merit to that challenge. Our analysis of the common understanding of the statutory language, the legislative history, and the severity of the statutory penalty establishes that, through the statute's prohibition on living off of or sharing in the proceeds of prostitution, the Legislature sought to proscribe the conduct of a pimp: one who knowingly and

---

[11] Regardless, we have discussed the hypothetical scenarios the defendant raises in our analysis of the statute, supra.

intentionally profits from the prostitution of another.  See,
e.g., 1914 report, supra at 22 (describing pimp as someone
profiting from "the business of commercialized prostitution").
As so construed, we do not consider G. L. c. 272, § 7, to be
"vague as applied" to the actual circumstances of the
defendant's case.  Walter, 388 Mass. at 466.  Unlike the
hypothetical prosecutions the defendant imagines, the conduct of
the defendant fits within the core concern of the statute.  In
short, the defendant can only challenge the constitutionality of
the statute as applied to him, and consistent with our judicial
construction of the statute to target those who intend to profit
from the prostitution of another, we hold that G. L. c. 272,
§ 7, is not unconstitutional as applied to this defendant.

    c.  Absence of jury instructions.  In addition to
challenging the constitutionality of G. L. c. 272 § 7, the
defendant argues that he was prejudiced by the trial judge's
failure to issue his requested jury instructions.  These
requested instructions would have supplemented model jury
instruction 7.140, which essentially repeats the statutory
prohibition that makes it a crime for a person, knowing another
person to be a prostitute, to share in the earnings or proceeds
of that person's prostitution.[12]  Because the defendant properly

---

[12] The instruction also defines a prostitute as a "person
who engages in common, indiscriminate sexual activity for hire."

preserved his objection to the judge's denial of his requested instructions, we review for prejudicial error.  See Commonwealth v. Cruz, 445 Mass. 589, 591 (2005).  Specifically, a judge's failure to give a requested jury instruction "is reversible error only if the requested instruction was substantially correct; was not substantively covered in the jury charge; and concerns an important issue such that the failure to give the instruction seriously impaired the defendant's ability to present a given defense."  Commonwealth v. Deane, 458 Mass. 43, 59 n.15 (2010).  Additionally, we consider whether the absence of an instruction clarifying that G. L. c. 272, § 7, expressly requires intent to profit from the prostitution of another caused a substantial risk of a miscarriage of justice.  See Commonwealth v. Richardson, 479 Mass. 344, 353 (2018) (where defendant does not request jury instruction at trial, reviewing court applies substantial risk of miscarriage of justice standard).

As explained above, the defendant requested three supplementary instructions.  First, he requested that a sentence be added indicating that G. L. c. 272, § 7, "is commonly known as the 'pimping' statute."  Second, he requested that the word "substantial" be added to the requirement that he have received

---

Instruction 7.140 of the Criminal Model Jury Instructions for Use in the District Court (2009).

support and maintenance from the earnings of a prostitute. Finally, he requested that the following fourth element be added: "Fourth, The Commonwealth must prove beyond a reasonable doubt that the Defendant played a substantial role in facilitating this person's prostitution. For example, it is not enough if the Defendant simply drove the prostitute to a job." On appeal the defendant, relying on Thetonia, further seeks to limit the definition of "pimping" to procuring customers for a client. See Thetonia, 27 Mass. App. Ct. at 786 & n.4 (defining "pimp" as one "who obtains customers . . . for a . . . prostitute" or "cohabits with a prostitute, lives off her earnings and often solicits for her" [citations omitted]).

First, we consider the defendant's request to have the jury instructed that G. L. c. 272, § 7, is "commonly known as the 'pimping' statute." We agree that this statement is correct as a matter of legislative history and common understanding. As explained, however, we do not see the necessity for further emphasizing this common understanding in these circumstances. Moreover, without further definition of "pimping," such instruction would provide little additional guidance to the jury.

Second, the defendant's request for an instruction that the Commonwealth must prove that he "shared in some substantial way" in the earnings of prostitution is not an accurate statement of

the law.  The key factor is the defendant's intention to profit from the prostitution of a known prostitute, not the substantiality of the defendant's gains.

Third, we conclude that the fourth element that the defendant sought to add -- substantial facilitation of another's prostitution -- is not a necessary aspect of "pimping" proscribed by G. L. c. 272, § 7.  It is true that standard definitions of "pimping" -- including one suggested by Thetonia -- describe facilitation of, as well as profiting from, prostitution.[13]  Yet G. L. c. 272, § 7, makes no mention of facilitation of prostitution (which would include, for example, soliciting for customers) because the Legislature chose to criminalize such conduct under separate sections of G. L. c. 272, not as a required element of  G. L. c. 272, § 7.  See St. 1910, c. 424 (enacting or amending present G. L. c. 272, §§ 2, 6, 8, 12, and 13).  See also Commonwealth v. Alfonso, 449 Mass. 738, 744 (2007) ("Statutes that relate to a common subject

---

[13] See Commonwealth v. Thetonia, 27 Mass. App. Ct. 783, 786 n.4 (1989) (defining "pimp" as "man who cohabits with a prostitute, lives off her earnings, and often solicits for her" [citation omitted]).  See also Oxford English Dictionary Online (defining "pimp" as "a man who takes a proportion of the earnings of a prostitute, usually in return for arranging clients, providing protection, etc.").  This definition of a pimp as one who facilitates prostitution for profit is long-standing.  See, e.g., R. Jameson, A Dictionary of the English Language:  By Samuel Johnson and John Walker 286 (1828) (defining "fleshmonger" as "[o]ne who deals in flesh; a pimp").

matter should be construed together so as to constitute an harmonious whole" [quotations and citation omitted]).

Finally, we consider whether the jury should have received an instruction, consistent with the statutory interpretation that we provide in this decision, explaining that the prosecution must show that the defendant intentionally profited from the prostitution of another.  Although we conclude that such an instruction should be given prospectively, it was not required in the instant case.  The Criminal Model Jury Instructions for Use in the District Court required the jury to determine that another person engaged in prostitution, the defendant knew that the other person was engaged in the prostitution, and the defendant received the proceeds from that prostitution.  As explained above, the common understanding of this language would be that it targets pimping, and the factual scenario here did not present concerns about innocent activity that might otherwise meet the literal language of the statute.  Rather, the defendant's conduct fell within the core concern of the statute.  In sum, we conclude that such an instruction was not required in the instant case.

We do decide, however, that the jury instructions for this crime should be expanded prospectively beyond those included in the Criminal Model Jury Instructions for Use in the District Court to avoid prosecution and thus possible conviction for

conduct that could not be classified as pimping but might otherwise meet the literal language of the statute.  Model jury instruction 7.140 should be modified as follows by inserting the emphasized language and deleting the struck through language:

"Deriving Support from Earnings of a Prostitute

"The defendant is charged with knowingly (deriving support from) (sharing in) the earnings of a prostitute.  This statute makes it a crime to engage in 'pimping,' that is, 'knowingly and intentionally profiting from the prostitution of another.'

"Chapter 7 of section 272 of our General Laws provides as follows:

"'Whoever, knowing a person to be a prostitute, shall live or derive support or maintenance, in whole or in part, from the earnings or proceeds of his prostitution . . . or shall share in such earnings [or] proceeds . . . shall be punished . . . .'

"In order to prove the defendant guilty of this offense, the Commonwealth must prove three things beyond a reasonable doubt:

"First:  That a particular person was engaged in prostitution. A prostitute is a person who engages in common, indiscriminate sexual activity for hire.

"Second:  The Commonwealth must prove beyond a reasonable doubt that the defendant ~~knew that such person was a prostitute~~ had knowledge of, and intended to profit from, this person's prostitution; and

"Third:  The Commonwealth must prove beyond a reasonable doubt that the defendant shared in some way in the earnings or proceeds from that person's prostitution."

d.  Other arguments.  The defendant also argues that (1) G. L. c. 272, § 7, lacks a mens rea requirement; (2) the

evidence was insufficient to convict him; and (3) the prosecution committed reversible error in its closing argument.

Given our holding that G. L. c. 272, § 7, requires an intent to profit from the prostitution of another, we reject the defendant's argument that this statute lacks a mens rea element.

We also reject the defendant's arguments that the evidence was insufficient to support his conviction when viewed in the light most favorable to the Commonwealth. See Commonwealth v. Bin, 480 Mass. 665, 674 (2018) (reciting sufficiency of evidence standard). The defendant's main insufficiency argument hinges on his contention that G. L. c. 272, § 7, incorporates the facilitation of prostitution as a necessary element, but for the reasons discussed supra, we reject that argument.[14]

Viewing the evidence in the light most favorable to the Commonwealth, a rational trier of fact reasonably could have inferred from witness testimony and circumstantial evidence that the defendant knowingly and intentionally profited from the prostitution of another. The defendant was in the vehicle in which a woman was driven to a hotel in response to an online advertisement for sexual services, and he waited in the parking

---

[14] Regardless, the jury could reasonably have found that the defendant facilitated the act of prostitution when he accompanied the woman engaged in prostitution to the place of prostitution and helped her conceal the proceeds of that prostitution.

lot while the woman went into the hotel to the prearranged prostitution transaction. That woman accepted money for sex and then immediately gave the defendant the money, which he concealed in his shoe. From this conduct the jury could infer that the defendant knew that the woman was a prostitute, knew she had received money for engaging in an act of prostitution, and, by taking the money from her, revealed an intention to profit from prostitution. See Commonwealth v. Matos, 78 Mass. App. Ct. 578, 589-590 (2011) (evidence sufficient to convict defendant under G. L. c. 272, § 7, where he accompanied prostitute to commercial sexual encounter at hotel arranged over Internet, picked her up from hotel, and took all proceeds of transaction).

Finally, we do not agree that any errors in the prosecutor's closing argument require reversal. The defendant makes much of one prosecution witness's equivocation as to whether the defendant was driving the vehicle that transported the two women to and from the hotel or instead may have been in the front passenger's seat. See note 3, supra. Whether or not the defendant was driving, as the prosecution said in its closing argument, the evidence still revealed that he accompanied the prostitute to and from the prearranged prostitution transaction at the hotel and received the proceeds from the transaction. See Matos, 78 Mass. App. Ct. at 589-590

(upholding sufficiency of evidence supporting defendant's conviction where he accompanied prostitute to and from hotel). And the prosecutor's statement that the second woman was a prostitute, which was not objected to below, was harmless in light of the ample evidence that the first woman engaged in a prostitution transaction.

3. <u>Conclusion</u>.  For the foregoing reasons, we affirm the defendant's conviction.  Additionally, we approve the model jury instructions set out above for future prosecutions under G. L. c. 272, § 7.[15]

<u>So ordered</u>.

---

[15] Similar jury instructions should be used for prosecutions under G. L. c. 272, § 4B, the parallel antipimping statute for a prostitute who is a minor.