For these reasons, I would reverse the Commonwealth Court's order granting summary judgment in favor of Appellees.

Justice CASTILLE joins in this dissenting opinion.

**COMMONWEALTH of Pennsylvania, Appellee**

**v.**

**Thomas A. CICCOLA, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 5, 2005.

Filed Feb. 7, 2006.

Reargument Denied April 17, 2006.

Marlin L. Markley, Jr., Camp Hill, for appellant.

Stephen P. Sloane, Asst. Dist. Atty., Bellefonte, for Com., appellee.

Before: KLEIN, BENDER and BOWES, JJ.

BENDER, J.

¶ 1 This is an appeal from a judgment of sentence imposed upon Appellant after he was convicted of driving under the influence (DUI) in a bench trial. Appellant raises two issues for our review: whether 75 Pa.C.S. § 3802 et seq. violates the substantive due process guarantees of the United States and/or Pennsylvania constitutions and; whether defendant's right to counsel under the United States and/or Pennsylvania Constitution was violated? We affirm.

¶ 2 Appellant was arrested for DUI after the vehicle he was driving was stopped by State College Police Officer W.C. Muse on College Avenue in State College, Pennsylvania, at approximately 3:46 a.m., on April 25, 2004. Officer Muse stopped Appellant after observing his vehicle stray into a portion of the roadway lined for parking cars and after being informed via police radio that the registration to Appellant's vehicle had been suspended. After approaching Appellant's vehicle and interacting with Appellant, Officer Muse was able to detect a strong odor of alcohol and observed a "bar stamp" on the back of Appellant's hand. Officer Muse further observed that Appellant's eyes were bloodshot and his face was flushed. Appellant was then asked to exit his vehicle and perform field sobriety tests. Since Appel-

lant had informed Officer Muse that he had lower back problems, Appellant was not asked to perform the one-leg stand test. However, Appellant performed the heel-to-toe test and, in the estimation of Officer Muse, failed that test. Appellant also submitted to a preliminary breath test (PBT) which gave a reading of .10%. Trial Court Opinion, 10/18/04, at 2. Appellant was then arrested and transported to Mount Nittany Medical Center for a blood test.

¶ 3 Upon arriving at Mount Nittany Medical Center, Appellant was read the implied consent warnings contained on PennDOT Form DL–26. Thus, Appellant was informed that he did not have a right to consult with an attorney prior to deciding whether or not to consent to chemical testing of his blood alcohol content (BAC).[1] Appellant told Officer Muse that he would consent to chemical testing after he saw the certifications of the medical technician who would be drawing his blood. However, Officer Muse informed Appellant that due to the time of day, he would not have an opportunity to inspect those documents prior to issuing consent. Officer Muse then again reviewed the implied consent warnings found on Form DL–26 and apprised Appellant of the consequences of refusing to consent to a BAC test. Despite the warnings, Appellant refused to give his consent and no chemical testing was performed.

¶ 4 On July 20, 2004, Appellant filed an omnibus pre-trial motion averring that Officer Muse lacked probable cause to arrest Appellant for DUI. On August 4, 2004, Appellant supplemented his omnibus pre-

---

1. PennDOT Form DL–26 provides, in relevant part:

   It is also my duty as a police officer to inform you that you have no right to speak with an attorney or anyone else before de-

   ciding whether to submit to testing and any request to speak with an attorney or anyone else after being provided these warnings or remaining silent when asked to submit to chemical testing will constitute a refusal,...

trial motion and averred that evidence of Appellant's refusal to consent to chemical testing should be suppressed as Appellant was denied an opportunity to consult with counsel prior to making the important decision whether to submit to chemical testing. A hearing was held on Appellant's motion on September 7, 2004, and the court issued an order denying Appellant's motion on October 18, 2004. Appellant proceeded to a bench trial on January 5, 2005, and, at the conclusion of that trial, was convicted of DUI and two summary offenses. The present appeal followed.

¶ 5 Appellant first asserts that various aspects of the new DUI law are violative of substantive due process guarantees due to vagueness and/or overbreadth. More specifically, Appellant contends that the provisions of 75 Pa.C.S. § 3802(2), 3802(b) and 3802(c), which tie illegality to registering, within two hours of driving or operating a motor vehicle, a BAC within one of three delineated subclasses, are vague and/or overbroad. Sections 3802(a)(2), (b) and (c) provide:

**(a) General Impairment.**—

. . .

(2) An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.08% but less than 0.10% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(b) High rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is at least 0.10% but less than 0.16% within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

**(c) Highest rate of alcohol.**—An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle.

¶ 6 The gist of Appellant's argument is that the terms of section 3802 do not make it illegal to drive with a BAC of .08% or greater but, rather, the terms of section 3802 makes it illegal to drive after imbibing a sufficient amount of alcohol such as to produce a BAC reading in excess of .08% or greater within two hours of driving. Thus, the literal terms of section 3802 would allow an individual to violate the terms of the statute even though he/she never drove a vehicle at a time when his/her BAC exceeded .08%.[2] Appellant argues that the above feature of the statute creates arbitrariness, vagueness and acts to criminalize constitutionally protected conduct. The problem with Appellant's argument is that he was not convicted

---

2. For instance, if a person on his way home from work stopped at a bar located a block away from his home and ingested five or six shots of whisky in rapid fashion and then left the bar and drove immediately home, he could have ingested sufficient alcohol to produce a BAC in excess of .08% within two hours of driving and would violate the provisions of section 3802. However, due to rates of absorption, he may have never approached that alcohol level or been intoxicated during the period of time he operated his motor vehicle.

under one of the sections he contends is unconstitutional.

¶ 7 As noted above, Appellant refused to consent to submit to a BAC test. In the absence of a BAC test, the Commonwealth was forced to proceed under 75 Pa.C.S. § 3802(a)(1), which reads:

An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the individual is rendered incapable of safely driving, operating or being in actual physical control of the movement of the vehicle.

As such, Appellant was not convicted of violating section 3802(a)(2), (b) or (c), which contains the language Appellant asserts violates the constitution. In *Commonwealth v. Dodge*, 287 Pa.Super. 148, 429 A.2d 1143, 1146 (1981), we stated:

While a defendant in an enforcement proceeding generally has standing to assert in his defense any claim, including the constitutionality of a statute, that challenges the authority of the state to impose its force upon him, he does not have standing to object to the constitutionality of a statute unless he is affected by the particular feature alleged to be in conflict with the constitution.

(Citations omitted.) Under the principle enunciated in *Dodge*, since Appellant was not convicted of violating section 3802(a)(2), (b) or (c), he has no standing to challenge the constitutionality of those provisions. Thus, we conclude that Appellant lacks standing to assert the challenges raised and therefore express no opinion as to the merits of Appellant's constitutional attacks.

■ ¶ 8 Appellant secondarily asserts that evidence of his refusal to submit to a BAC test should have been suppressed as he was not provided an opportunity to consult with counsel before deciding whether to give consent to undergo a BAC test. Appellant contends that the provision in the implied consent warnings that indicates that a person has no right to consult with an attorney before deciding whether to submit to a chemical test requested by a police officer violated Appellant's sixth amendment right to counsel. We disagree.

■ ¶ 9 At its heart, the request to submit to a BAC test is a request for a search and/or seizure of the person who is the subject of the request, and is therefore a matter of search and seizure law, or a derivative thereof. A BAC test is evidence of a person's level of intoxication and, technically speaking, once a police officer develops probable cause to believe a driver has been driving under the influence of intoxicating substances, the state may constitutionally seek evidence to this effect. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). Theoretically speaking, a search warrant or court order could be sought and issued authorizing the BAC test and if the subject of the search warrant or order resisted, he would be subject to sanctions for contempt of court. Practically speaking, seeking a search warrant, or other court order, is not a viable option since the evidence of a person's BAC dissipates fairly rapidly and the act of seeking and obtaining a warrant/order will require a period of time during which the suspect's BAC will be in a state of flux and will eventually dissipate. Given the above, many states throughout the country have passed implied consent legislation which is tied to the granting of a driver's license. Under implied consent legislation, when one drives a motor vehicle within the borders of the jurisdiction in question, one is deemed to have provided consent, in advance, to submit to a BAC

test under certain circumstances.[3] Most implied consent statutes, including Pennsylvania's, allow an individual to refuse the request.[4] However, this right to refuse, with attendant consequences, is not a constitutional right and cannot be construed to mean that the state is without constitutional authority to seek evidence.

¶ 10 Implied consent laws notwithstanding, from a constitutional standpoint a request to submit to a BAC test is similar to a police officer's seeking consent to a warrantless search of a car or residence. Absent an exigency, the police have no constitutional right to conduct the search without a warrant, but nothing in the constitution prevents the police officer from seeking consent to search, which will then allow them to bypass the trouble of applying for and securing a warrant. If the above analogy is apt, then the question presented here is whether one has a right to counsel to aid in the determination of whether to consent to a post-arrest, pre-indictment request to gather evidence? It would appear that the answer is "no."

¶ 11 In *United States v. Hidalgo*, 7 F.3d 1566 (11th Cir.1993), the 11th Circuit Court of Appeals considered whether a consent to search an arrestee's house that was provided without the benefit of consulting with counsel violated the appellant's right to counsel. The Court concluded that the provision of consent was not invalidated due to the fact that the arrestee was not first afforded an opportunity to seek counsel's advice. Critical to the *Hidalgo* Court's analysis was the conclusion that, generally speaking, the post-arrest/pre-indictment evidence gathering stage does not constitute a critical stage of the proceedings for purposes of determining whether the right to counsel attaches. It has been a staple of caselaw dealing with the sixth amendment right to counsel that a criminal defendant has a constitutionally guaranteed right to counsel at all "critical stages" of a criminal proceeding. *Commonwealth v. West*, 370 Pa.Super. 365, 536 A.2d 447 (1988).

¶ 12 In *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), the United States Supreme Court considered the right to counsel in the context of a post-indictment lineup and ultimately concluded that the right of counsel did attach to a post-indictment lineup procedure. In reaching its conclusion, the

---

**3.** The terms of Pennsylvania's Implied Consent Law are illustrative of the typical implied consent law:

> **§ 1547. Chemical testing to determine amount of alcohol or controlled substance**
> **(a) General rule.**—Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
> (1) in violation of section 1543(b)(1.1) (relating to driving while operating privilege is suspended or revoked), 3802 (relat-

ing to driving under influence of alcohol or controlled substance) or 3808(a)(2) (relating to illegally operating a motor vehicle not equipped with ignition interlock); or
> (2) which was involved in an accident in which the operator or passenger of any vehicle involved or a pedestrian required treatment at a medical facility or was killed.
> 75 Pa.C.S. § 1547.

**4.** The Pennsylvania provision follows:

> **(b) Suspension for refusal.**—
> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:
> 75 Pa.C.S. § 1547(b)

Court summarized the overriding constitutional principle involved and elaborated upon what makes a confrontation a critical stage of the proceedings for sixth amendment purposes:

> In sum, the principle of *Powell v. Alabama* [287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932),] and succeeding cases requires that we scrutinize *any* pretrial confrontation of the accused to determine whether the presence of his counsel is necessary to preserve the defendant's basic right to a fair trial as affected by his right meaningfully to cross-examine the witnesses against him and to have effective assistance of counsel at the trial itself. It calls upon us to analyze whether potential substantial prejudice to defendant's rights inheres in the particular confrontation and the ability of counsel to help avoid that prejudice.

*Id.* 388 U.S. at 227, 87 S.Ct. at 1932.

The Court then stated:

> The Government characterizes the lineup as a mere preparatory step in the gathering of the prosecution's evidence, not different—for Sixth Amendment purposes—from various other preparatory steps, such as systematized or scientific analyzing of the accused's fingerprints, blood sample, clothing, hair, and the like. We think there are differences which preclude such stages being characterized as critical stages at which the accused has the right to the presence of his counsel. Knowledge of the techniques of science and technology is sufficiently available, and the variables in techniques few enough, that the accused has the opportunity for a meaningful confrontation of the Government's case at trial through the ordinary processes of cross-examination of the Government's expert witnesses and the presentation of the evidence of his own experts. The denial of a right to have his counsel present at such analyses does not therefore violate the Sixth Amendment; they are not critical stages since there is minimal risk that his counsel's absence at such stages might derogate from his right to a fair trial.

*Id.* 388 U.S. at 227–28, 87 S.Ct. at 1932–33.

¶ 13 Undoubtedly, the decision whether to submit to chemical testing can be an important tactical decision. If one refuses a BAC test, he may deprive the Commonwealth of valuable evidence and force the Commonwealth to proceed under section 3802(a)(1), incapable of safely driving. Depending upon the evidence available to the Commonwealth to prove the driver lacked the capacity to drive safely, the absence of a BAC test may hinder the Commonwealth's case and even lead to an acquittal even though the possibility existed that the driver was over the proscribed BAC limit. Conversely, refusing to submit to a BAC test comes with consequences, including, if convicted, punishment as if the defendant had operated a motor vehicle at the highest rate of alcohol.[5] Thus, it cannot be

---

5. To the extent the PBT provided an accurate gauge of Appellant's level of intoxication the present case illustrates the risk of refusing to consent to chemical testing. Here, due to that refusal, Appellant was punished pursuant to 75 Pa.C.S. § 3804(c), "highest blood alcohol," even though he would have been punished under section 3804(a) or (b) had he consented to chemical testing and the test had produced a result similar to the one produced by the PBT.

Of course, we express no opinion upon the constitutionality of the provisions of section 3804 which increases the punishment of a person convicted of violating section 3802(a)(1) if they refuse testing of blood or breath. Our review today is limited to whether or not one is entitled to consultation with counsel prior to deciding whether to submit to chemical testing.

doubted that the decision to consent to a BAC test has strategic implications and, in this respect, might be deemed "critical" to the defendant.

¶ 14 However, it does not appear that such strategic tactical decisions have been recognized as critical stages of the proceedings so as to invoke the right to counsel. A request to submit to a BAC test represents the government's efforts to gather evidence already in existence, albeit in a transitory or unstable state which makes time of the essence. As the quote above indicates, encounters involving the gathering of evidence are not considered "critical proceedings" for purposes of the right to counsel. That is, such preliminary encounters do not affect the inherent "fairness" of the trial vis-à-vis the ability to cross-examine witnesses or have effective assistance of counsel at the trial itself. As such, the provision of counsel at this stage is not constitutionally mandated and the denial of the right to confer with counsel prior to deciding whether to submit to chemical testing does not render Appellant's refusal inadmissible.

¶ 15 Judgment of sentence affirmed.

¶ 16 Judge KLEIN joins and files a concurring statement.

KLEIN, J., Concurring.

¶ 1 While I fully agree with the majority and join in the Opinion, I write separately only to note that while I agree that there were no constitutional violations under the circumstances of the instant case, I do not wish to express any opinion as to the constitutionality or lack thereof of *other* sections of the new DUI law or the departmental regulations under that law.