**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Brian David SEMUTA, Appellant.**

Superior Court of Pennsylvania.

Submitted May 23, 2006.

Filed June 30, 2006.

Marlin L. Markley, Jr., Camp Hill, for appellant.

Jamie M. Keating, Asst. Dist. Atty., Carlisle, for Com., appellee.

BEFORE: FORD ELLIOTT, P.J., STEVENS, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 Following a non-jury trial held on June 6, 2005, Appellant Brian David Semu-

ta was convicted of Driving Under the Influence of Alcohol, high rate.[1] Appellant appeals from the judgment of sentence entered in the Court of Common Pleas of Cumberland County on August 16, 2005,[2] at which time Appellant was sentenced to a term of imprisonment of not less than thirty (30) days nor more than six (6) months, to pay the costs of prosecution and to pay a fine of $750.00.[3] We affirm.

¶ 2 The salient facts and procedural history in the instant matter are as follows: On January 31, 2005, Appellant filed an Omnibus Pretrial Motion for Relief in which he challenged the propriety of the Horizontal Gaze Nystagmeus (HGN) Test administered to him, claimed evidence acquired through chemical testing violated his constitutional right to counsel, and argued the charge brought against him amounted to a violation of his substantive due process rights. On April 6, 2005, Appellant filed an Amended Omnibus Pretrial Motion for Relief in which he added a challenge to the breathalyzer test administered to him and alleged it violated his right to be free from unreasonable searches and seizures under the Pennsylvania and United States Constitutions.

¶ 3 On April 12, 2005, a hearing was held regarding Appellant's Omnibus Pretrial Motion. At that time, Patrolman Douglas L. Foltz testified that he was working for Lower Allen Township Police Department on October 15, 2004, was dressed in full uniform, and was on patrol in a fully-marked police car. N.T., 4/12/05,

at 7. Officer Foltz had been driving westbound on Letchworth Road and as he came around a bend in the road, he noticed a pickup truck without any headlights traveling closely behind a car. N.T., 4/12/05, at 7–8. Officer Foltz flashed his high beams in an attempt to alert the driver of the truck to turn the headlights on, to no avail. N.T., 4/12/05, at 8. Officer Foltz made a U-turn and followed the truck with his emergency lights and siren in operation. Rather than stopping promptly in a safe, grassy area, the truck continued through an intersection and stopped in a dangerous location along the bridge to Route 83. N.T., 4/12/05, at 8. Appellant effected the stop at one minute before midnight. N.T., 4/12/05, at 13.

¶ 4 Officer Foltz realized a male had been driving, and a female passenger, whom he later learned was Appellant's wife, was also in the truck. When he began speaking to Appellant, Officer Foltz noticed his eyes were glassy and bloodshot and detected an odor of an alcoholic beverage emanating from within the vehicle. N.T., 4/12/05, at 9. Appellant's shirt was unbuttoned, his face was flushed, and he had chewing tobacco in his lip. N.T., 4/12/05, at 9.

¶ 5 Appellant indicated he and his wife had been at Gullifty's, where he consumed two alcoholic drinks, and that just prior to the stop they had been at his in-laws. N.T., 4/12/05, at 10. Officer Foltz asked Appellant to step out of the vehicle and perform some standardized, field sobriety

1. 75 Pa.C.S.A. § 3802(b) which refers to alcohol concentrations in an individual's blood or breath of at least 0.10% but less than 0.16% within two (2) hours after the individual has driven, operated, or been in actual physical control of the movement of the vehicle.

2. Appellant incorrectly indicates he is appealing from the judgment of sentence as well as two prior orders, see infra.

3. Appellant's commitment to prison was deferred pending the perfection of a direct appeal to this Court within thirty (30) days of sentencing.

tests. N.T., 4/12/05, at 10–11. At that time, Officer Foltz became aware the odor of alcoholic beverage emanated from Appellant. N.T., 4/12/05, at 11.

¶ 6 Officer Foltz asked Appellant to submit to the HGN walk and turn and one leg stand. N.T., 4/12/05, at 11. Appellant did not listen to the instructions prior to performing the walk and turn. N.T., 4/12/05, at 11. Also, Appellant incorrectly raised his arms for balance during the one leg stand test. N.T., 4/12/05, at 12. Next, Appellant submitted to a preliminary breath test which registered Appellant had been drinking. N.T., 4/12/05, at 12. Officer Foltz placed Appellant under arrest and informed him the arrest was the result of his driving under the influence. N.T., 4/12/05, at 12.

¶ 7 Officer Foltz transported Appellant to the West Shore Booking Center and the two arrived at 12:29 a.m. N.T., 4/12/05, at 13. A twenty minute observation time began at 12:37 and ended at 12:57 a.m. N.T., 4/12/05, at 14. During that time, Officer Foltz remained with Appellant, made sure Appellant did not have any substance in his mouth, and read him the chemical test warnings. N.T., 4/12/05, at 14.

¶ 8 When the observation period expired, Appellant agreed to submit to the chemical test and did not request the assistance of an attorney before he did so. N.T., 4/12/05, at 15–16. Appellant received his *Miranda*[4] warnings from the booking center agent before Appellant answered any questions. N.T., 4/12/05, at 16.

¶ 9 Officer Foltz did not consider obtaining a search warrant before seizing Appellant's breath or blood, in that in light of his training, he felt such was not neces-

sary. N.T., 4/12/05, at 17. Even had Appellant refused the chemical testing, Officer Foltz probably would not have sought a search warrant, as he was instructed to do so only if there were a high BAC and in light of the results of the preliminary breath test, Officer Foltz would have been satisfied with a license suspension for Appellant. N.T., 4/12/05, at 19.

¶ 10 On April 28, 2005, the suppression court denied Appellant's Omnibus Pretrial Motion.

¶ 11 On May 27, 2005, a non-jury trial was held at which time testimony was heard regarding a motion in limine on the probable cause for arrest issue which had not been heard during the hearing on the omnibus pretrial motion. Officer Foltz again presented testimony regarding his encounter with Appellant on October 15, 2004. N.T., 5/27/05, at 5–46. In addition, Officer Foltz indicated that the preliminary breath test revealed a BAC for Appellant of .13 percent. N.T., 5/27/05, at 19. Officer Foltz also acknowledged that such a test is not utilized to determine one's BAC, but, rather, is used as a tool to indicate whether one had consumed alcohol. N.T., 5/27/05, at 31. Officer Foltz had Appellant empty his mouth approximately two minutes after the stop, and he administered the preliminary breathalyzer test approximately nine minutes later. N.T., 5/27/05, at 34.

¶ 12 Lauren E. Way testified she worked for the Cumberland County District Attorney's Office in the Central Processing Department. N.T., 5/27/05, at 46–47. Ms. Way indicated she was a trained, breath test operator for the Intoxilyzer 5000, and she also had training to administer standardized field sobriety tests. N.T.,

4. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

5/27/05, at 47. As the office was busy that evening, Officer Foltz remained with Appellant while Ms. Way processed other individuals. N.T., 5/27/05, at 49.

¶ 13 Ms. Way provided Appellant his audio and tape warnings and asked Appellant to submit to a breath test. Ms. Way conducted the test utilizing the Intoxilyzer 5000. N.T., 5/27/05, at 49–50. The breath sample revealed a BAC of .129 percent. N.T., 5/27/05, at 54. After conducting the test, Ms. Way read Appellant his *Miranda* warnings. N.T., 5/27/05, at 54. Appellant signed the sheet from which Ms. Way read the warnings and agreed to answer questions Ms. Way read from the intoxication report form. N.T., 5/27/05, at 55.

¶ 14 On June 6, 2005, the trial court denied Appellant's Motion to Suppress Evidence and found Appellant guilty of Driving Under the Influence of Alcohol, High Rate, in violation of the Vehicle Code at 75 Pa.C.S.A. § 3802(b).

¶ 15 On August 16, 2005, the sentencing court sentenced Appellant to a term of imprisonment of not less than thirty (30) days nor more than six (6) months and to pay the costs of prosecution and a fine of $750.00.

¶ 16 On September 8, 2005, Appellant filed a timely notice of appeal, in which he stated he was appealing to this Court from the Order of Court dated April 28, 2005, the Order of Court dated June 6, 2005, and the Sentence imposed on August 16, 2005.

¶ 17 On September 12, the lower court ordered Appellant to file a concise statement of the matters complained of on appeal, and Appellant filed the same on September 23, 2005. On October 27, 2005, the trial court filed its Opinion Pursuant to Rule 1925.[5]

¶ 18 In his brief, Appellant raises the following issues for our review:

(1) Whether the suppression court erred by considering the result of the preliminary breath test that was administered within nine (9) minutes of [Appellant] having tobacco in his mouth.

(2) Whether the suppression court erred in denying [Appellant's] Omnibus Pre–Trial Motion to Suppress Evidence on the basis tht [sic] the police lacked probable cause to arrest.

(3) Whether 75 Pa.C.S.A. § 3802 et al. violates the substantive due process guarantees of the United States and/or Pennsylvania Constitutions.

(4) Whether [Appellant's] right to counsel under the United States and/or Pennsylvania Constitution was violated.

(5) Whether the suppression court erred in denying [Appellant's] motion to suppress the breath test result when the breath sample was taken without a warrant, without voluntary consent, and without exigent circumstances.

Brief for Appellant at 4.

¶ 19 We will discuss each of these issues in turn and shall consider the first two together.

¶ 20 Appellant contends Officer Fultz lacked probable cause to make an arrest, and the suppression court should have found the result of the preliminary breath test to be inadmissible, because Appellant was provided the test within nine minutes of chewing tobacco and likely had residue from the tobacco in his mouth at the time

---

**5.** Pa.R.A.P. 1925(a).

Officer Fultz administered the test. Brief for Appellant at 12.

¶ 21 When reviewing a trial court's denial of a suppression motion, this Court is bound by the following standard:

[An appellate court's] standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Since the prosecution prevailed in the suppression court, we may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the factual findings of the trial court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Stevenson*, 894 A.2d 759, 769 (Pa.Super.2006) (*citing Commonwealth v. Bomar*, 573 Pa. 426, 445, 826 A.2d 831, 842 (2003) (citations omitted in original)).

¶ 22 The Vehicle Code provides that:

(k) Prearrest breath test authorized—A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person prior to arrest to submit to a preliminary breath test on a device approved by the Department ·of Health for this purpose. The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest. The preliminary breath test shall be in addition to any other requirements of this title. No person has any right to expect or demand a preliminary breath test. Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e).

75 Pa.C.S.A. § 1547(k).

¶ 23 A police officer may detain an individual in order to conduct an investigation where that officer reasonably suspects the individual is engaging in criminal conduct. *Commonwealth v. Conrad*, 892 A.2d 826, 829 (Pa.Super.2006) (*citing Commonwealth v. Cook*, 558 Pa. 50, 735 A.2d 673, 676 (1999)). This standard, known as reasonable suspicion, is less stringent than probable cause. *Id.*

In order to determine whether the police officer had reasonable suspicion, the totality of the circumstances must be considered. In making this determination, we must give 'due weight. . . to the specific reasonable inferences [the police officer] is entitled to draw from the facts in light of his experience.' Also, the totality of the circumstances test does not limit our inquiry to an examination of only those facts that clearly indicate criminal conduct. Rather, 'even a combination of innocent facts, when taken together, may warrant further investigation by the police officer.'

*Conrad*, 892 A.2d at 829 (citations omitted).

¶ 24 Herein, prior to the time Officer Foltz asked Appellant to submit to a preliminary breath test, he had observed Appellant driving a pick-up truck a considerable distance on a road at about midnight without his headlights on. After stopping Appellant, Officer Foltz observed Appellant's flushed face and glassy eyes and noticed the odor of alcohol emanated

from the truck. In addition, Appellant admitted to having drunk two alcoholic beverages at Gullifty's, a local bar. Finally, Appellant had difficulty following directions, started too soon, and made an incorrect turn during a walk-and-turn test as well as lost his balance and raised his arms during a one-leg stand test. Taken together, we find these facts provided reasonable suspicion to Officer Foltz to believe Appellant had been driving his pickup truck while under the influence of alcohol and was incapable of safe driving in violation of 75 Pa.C.S.A. § 3802. These factors, coupled with the result of Appellant's preliminary breath test, provided Officer Foltz with probable cause to arrest Appellant.

▮▮▮ ¶ 25 In determining whether probable cause to make an arrest exists in a given situation, this Court will consider the totality of the circumstances presented to the police officer and not concentrate on each, individual element. *Commonwealth v. Wright*, 867 A.2d 1265, 1268 (Pa.Super.2005). Moreover, it is within the province of the trial judge, who had the opportunity to observe the witnesses' credibility, to determine the weight to be accorded their testimony. *Commonwealth v. Gallagher*, 896 A.2d 583, 584–585 (Pa.Super.2006).

¶ 26 We find Appellant's assertion that the preliminary breath test results were flawed because he had tobacco in his mouth nine minutes prior to its administration is immaterial and irrelevant to his

ultimate arrest and conviction herein. Notably, the preliminary breath test results were nearly identical to those obtained from the Intoxilyzer 5000 following the twenty minute observation period. Moreover, unlike the results obtained from the Intoxilyzer 5000, the results obtained from the preliminary breath test served only as an aid to Officer Foltz in determining probable cause for arrest, and were not admissible evidence against Appellant. *See Commonwealth v. Myrtetus*, 397 Pa.Super. 299, 580 A.2d 42, 47 (1990). Therefore, the preliminary breath test results merely confirmed the officer's belief Appellant was driving after imbibing alcohol.

▮▮▮▮▮ ¶ 27 Appellant next maintains that Section 3802 of the Vehicle Code is unconstitutional because it violates the substantive due process guarantees of the United States and/or Pennsylvania Constitutions. Specifically, Appellant contends the law is vague and overbroad, "because it penalizes protected conduct, and is drafted in such a way as to be ambiguous in meaning, leaving a reasonable person unsure as to what conduct is prohibited."[6] Brief for Appellant at 16.

¶ 28 When considering a constitutional challenge to Section 3802 on the basis that it is vague, overbroad, and allows for arbitrary enforcement in violation of substantive due process rights guaranteed under the Pennsylvania and United States Constitutions, this Court recently concluded that this provision of the Vehicle Code is not vague or overbroad in that "[i]t gives a

---

**6.** Appellant was charged only with 75 Pa. C.S.A. § 3802(a)(1) and 75 Pa.C.S.A. § 3802(b), yet he challenges Section 3802 in its entirety. An individual launching a constitutional challenge to a statute must be injured by it. He cannot challenge it in the abstract. *Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172 (1986). Appellant was not charged with

each subsection of Section 3802; thus, we find he may not challenge all of it. *See Commonwealth v. Dodge*, 287 Pa.Super. 148, 429 A.2d 1143, 1146 (1981)(providing that a defendant "does not have standing to object to the constitutionality of a statute unless he is affected by the particular feature alleged to be in conflict with the constitution").

person of ordinary intelligence notice that he may not drive after imbibing a sufficient amount of alcohol such that he is incapable of driving safely." *Commonwealth v. McCoy*, 895 A.2d 18, 31 (Pa.Super.2006). We also determined the provision is not overbroad since it does not punish any constitutionally protected activity and reasoned our Supreme Court has recognized that charts are widely available which indicate the amount of alcohol individuals of varying weights may consume, and that an individual of ordinary intelligence who chooses to over imbibe and drive is certainly aware such conduct is prohibited. *McCoy*, 895 A.2d at 32 (*citing Commonwealth v. Mikulan*, 504 Pa. 244, 252, 253, 470 A.2d 1339, 1343 (1983)(plurality)). As such, we find no merit in this claim.

¶ 29 Appellant also argues Section 3802 encourages arbitrary and discriminatory enforcement and is overbroad in that an individual can be found guilty of violating it without ever having driven at a time when his BAC was above 0.08%, because the statute punishes individuals for the amount of alcohol measured in their blood up to two hours after they have driven. Brief for Appellant at 18–19. In recently dismissing a similar argument, this Court reasoned such a contention is more akin to an over breadth challenge to the statute and stressed:

"that there is no longer a statutory provision such as former 3731(a)(4) which

provides that a person may drive if his BAC is below a particular BAC *at the time of driving*. Rather, the pertinent question under 3802(a)(2), (b), and (c), is 'what is the individual's BAC as determined by a test taken within two hours of driving?' Further, 'there is no constitutional, statutory or common law right to the consumption of *any* quantity of alcohol before driving.' Accordingly, Appellant's arguments in this regard must fail."

*Commonwealth v. McCoy*, 895 A.2d 18, 33 (Pa.Super.2006) (citation omitted) (emphasis in original). In light of this authority, we find this aspect of Appellant's third argument to be without merit.[7]

¶ 30 In his brief, Appellant also asserts 75 Pa.C.S.A. § 3804 should be stricken as a violation of the due process clause of both the United States and Pennsylvania Constitutions because of its vagueness. The problem with this portion of Appellant's argument is that he was not convicted under this section.[8]

While a defendant in an enforcement proceeding generally has standing to assert in his defense any claim, including the constitutionality of a statute, that challenges the authority of the state to impose its force upon him, he does not have standing to object to the constitutionality of a statute unless he is affected by the particular feature alleged to be in conflict with the constitution.

---

7. In his Brief, Appellant relies upon *Commonwealth v. Barud*, 545 Pa. 297, 681 A.2d 162 (1996) and claims that as the Supreme Court examined the issue of vagueness and over breadth and found a similar statute to be unconstitutional on those grounds, that decision should control herein. Nevertheless, this Court in *McCoy, supra,* noted that "[i]n the amended DUI law, Section 3802, the confusion caused by contradictory Sections 3731(a)(4) and (a)(5) has been eliminated.

Section 3802 no longer has a provision like 3731(a)(4). Thus we conclude *Barud* is not controlling." *Id.* at 32.

8. We note that while this section pertains to sentencing, it was not referenced during the sentencing proceeding, nor does Appellant specifically argue how a prior conviction of his pertains to this section.

*Commonwealth v. Ciccola,* 894 A.2d 744, 747 (Pa.Super.2006) (*citing Commonwealth v. Dodge,* 287 Pa.Super. 148, 429 A.2d 1143, 1146 (1981)). Thus, we conclude that Appellant lacks standing to raise a challenge to the constitutionality of 75 Pa.C.S.A. § 3804 and therefore express no opinion as to the merits of this aspect of his constitutional challenge. *Id.*

¶ 31 Appellant next contends his right to counsel which is guaranteed under the United States and/or Pennsylvania Constitutions was violated as the "request for chemical testing is a post-arrest confrontation between the accused and the officer, whereby the accused is required to make a decision of great legal consequence." Brief for Appellant at 24–25. In *Ciccola, supra,* this Court addressed the issue of whether a person's sixth amendment right to counsel is violated if he has no right to consult with counsel before deciding to consent to a chemical test requested by a police officer. We acknowledged that the sixth amendment right to counsel attaches at critical stages of a criminal proceeding and concluded that the decision to submit to a BAC test is not such a stage. *Ciccola,* 894 A.2d at 749–750 (Pa.Super.2006). We reasoned that although the decision to submit to a BAC is an important, tactical one, it is made during an encounter involving the gathering of evidence and does not affect the fairness of trial in the sense that a defendant will have the ability to have counsel's assistance in cross-examining witnesses and in planning trial strategy. *Id.* Thus, we concluded the decision to submit to a BAC was not a critical proceeding for the purpose of the right to counsel. *Id. See McCoy,* 895 A.2d at 28. Thus, in light of the aforementioned authority, we find Appellant is not entitled to relief on this basis.

¶ 32 Finally, Appellant contends the suppression court erred in denying his mo-tion to suppress the breath test result as the breath sample was taken without a warrant, without voluntary consent, and without exigent circumstances. This Court has determined that in cases where a driver may be under the influence of intoxicating substances:

> [p]ractically speaking, seeking a search warrant, or other court order, is not a viable option since the evidence of a person's BAC dissipates fairly rapidly and the act of seeking and obtaining a warrant/order will require a period of time during which the suspect's BAC will be in a state of flux and will eventually dissipate.

*Ciccola,* 894 A.2d at 747.

■ ¶ 33 Even were this not the case, we find Appellant did voluntary consent to the breath test. Officer Foltz testified he read a copy of the chemical test warnings to Appellant, after which Appellant signed the same. N.T., 4/12/05, at 15. After indicating in writing that he was advised of the chemical test warnings, Appellant then verbally stated he would submit to a chemical breath test. N.T., 4/12/05, at 15. Appellant did not request the assistance of a lawyer at any time prior to the test. N.T., 4/12/05, at 15.

¶ 34 Also, Ms. Way indicated that after she administered the breath test, she read Appellant his *Miranda* warnings. Both she and Appellant signed the sheet from which the audio visual warnings and Miranda warnings are read. N.T., 5/27/05, at 54. Thereafter, Appellant agreed to answer the questions on the intoxication report form. N.T., 5/27/05, at 55.

¶ 35 In light of the foregoing, we find the suppression court did not err in denying Appellant's Omnibus Pretrial Motion and his Motion in Limine. Furthermore,

we also find there were no constitutional violations under the circumstances of the instant case.

¶ 36 Judgment of sentence affirmed.