J-S54026-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BENJAMIN C. BODNARI | : | |
| | : | |
| Appellant | : | No. 780 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 11, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s): CP-06-CR-0005687-2018

BEFORE: NICHOLS, J., McLAUGHLIN, J., and MUSMANNO, J.

MEMORANDUM BY McLAUGHLIN, J.:         **FILED APRIL 15, 2021**

Benjamin C. Bodnari appeals from the judgment of sentence entered after he pleaded guilty to Indecent Assault.[1] Bodnari claims the trial court erred in classifying him as a sexually violent predator ("SVP")[2] and that the automatic lifetime registration requirements imposed by Subchapter H of the Sex Offender Registration and Notification Act ("SORNA")[3] are unconstitutional. We affirm.

When pleading guilty, Bodnari admitted to the following facts:

Between March 28, 2015, and April 3, 2015, Bodnari rubbed a 12-year-old female's butt over her underwear but under her pajamas and touched her above her vaginal area over her pajamas and licked his fingers. On a second occasion during that timeframe,

---

[1] **See** 18 Pa.C.S.A. § 3126(a)(2).

[2] **See** 42 Pa.C.S.A. § 9799.12 (defining SVP).

[3] **See** 42 Pa.C.S.A §§ 9799.10-9799.42.

> Bodnari touched the breast area and vagina of a 13-year-old female over her clothes.

Trial Court Opinion, filed July 22, 2020, at 2-3 (citing N.T., 7/11/19 (Guilty Plea and Sentencing), at 6). Bodnari was 33 years old at the time of the assaults. N.T. (Guilty Plea and Sentencing) at 6.

As part of his plea deal, the trial court dismissed the ten counts with which the Commonwealth had originally charged Bodnari, and Bodnari waived his right to have a determination of his SVP status prior to his sentencing hearing. *See* 42 Pa.C.S.A. § 9799.24(a). The court sentenced Bodnari to serve 11½ to 23 months' incarceration, followed by three years of probation. The court then ordered the State Sexual Offenders Assessment Board to determine whether Bodnari should be classified an SVP. *See id.* at § 9799.24(b).

Bodnari filed a Motion to Quash the SVP determination on the basis that it was unconstitutional under *Commonwealth v. Butler*, 173 A.3d 1212, 1214-18 (Pa.Super. 2017) ("*Butler I*"), *rev'd by* 226 A.3d 972 (Pa. 2020). *See* Motion to Quash, 10/10/19, at ¶¶ 5-6. The trial court entered an order scheduling a hearing on the Motion, which it then continued until the time of Bodnari's SVP hearing. *See* 42 Pa.C.S.A. § 9799.24(e). At the beginning of the hearing, the Commonwealth argued, "The *Butler* matter had been outstanding before the Pennsylvania Supreme Court [and] has come back in favor of the Commonwealth[.]" N.T., 4/30/20 (SVP hearing), at 4. Although the trial court did not explicitly rule on Bodnari's Motion to Quash, the court in effect denied it by proceeding to the SVP hearing.

The Commonwealth presented the testimony of Dr. Veronique N. Valliere, a licensed psychologist, and a member of the Board, who testified as an expert in the evaluation of individuals as SVPs. Dr. Valliere testified that Bodnari met the criteria to be classified an SVP. N.T., 4/30/20 (SVP hearing), at 10. She found he met the diagnostic criteria for "other specified paraphilic disorder to children," due to his history of sexual arousal and sexual behavior with adolescents. *Id.* at 10-11. She noted that although Bodnari had long ago suffered legal consequences due to another sexual offense involving a minor, this had not deterred him from committing the instant offenses, because his disorder "overrides [his] control." *Id.* Dr. Valliere explained that "[a] paraphilic disorder is considered an acquired or lifetime diagnosis that must be managed over the course of someone's lifetime after [a] pattern is created," and that it is "related to a future likelihood of reoffending." *Id.* She stated Bodnari "has proven his own risk of re-offense because he is multiply arrested [sic] for sex crimes." *Id.* at 11.[4]

Dr. Valliere also found Bodnari's behavior satisfied the statutory definition of predatory, and that he has "significant antisocial traits" which "make it difficult for him to establish internal barriers to the criminal and sexual behavior," as evidenced by his "repeated sentencing dates, assaultive

---

[4] Dr. Valliere also stated she could not predict whether Bodnari was "likely to reoffend in particular," but stated "he does have a disorder which is motivated, in his particular case that has motivated his re-offense anyway, so it's the disorder that needs to be related to the risk and not for me to make a prediction of the risk." N.T. (SVP hearing) at 11.

crimes, probation violations, contempt of child support orders, and . . . lifestyle instability." ***Id.*** at 11-12. The Commonwealth submitted Dr. Valliere's assessment report into evidence.

On cross-examination, Dr. Valliere testified that in addition to the two acts for which Bodnari plead guilty, Bodnari's pattern of sexual behavior involved a 2003 conviction for sexual abuse of a 14-year-old girl, and allegations from 1999 and 2002. ***Id.*** at 13. She explained that at those earlier times, when Bodnari was younger, he may not have met the SVP criteria, but that "as he aged, he continued to pursue minor children sexually, that's what says that it went from a, perhaps a consensual, of not illegal, relationship, to a sexual pattern of arousal. He didn't grow out of it." ***Id.***

The court determined that the Commonwealth provided clear and convincing evidence that Bodnari was an SVP, and notified him of his duty to register for his lifetime under SORNA. ***See*** 42 Pa.C.S.A. § 9799.15(a)(5).

Bodnari appealed,[5] and raises the following issues:

[1.] Whether the lower court erred in designating [Bodnari] as a "sexually violent predator" (SVP) where the Commonwealth adduced legally insufficient (unclear and unconvincing) evidence to support a finding that [Bodnari] had a likelihood of sexual recidivism[.]

---

[5] Bodnari's notice of appeal is timely, as he filed it within 30 days of the court's April 30, 2020 order classifying him as an SVP, which finalized his judgment of sentence. ***See*** Pa.R.A.P. 903(a); ***Commonwealth v. Schrader***, 141 A.3d 558, 561 (Pa.Super. 2016) ("where a defendant pleads guilty and waives a pre-sentence SVP determination, the judgment of sentence is not final until that determination is rendered").

[2.] Whether the lifetime-registration requirements of Subchapter H of The Sex Offender Registration and Notification Act (SORNA) constitute an illegal sentence that violates the due process clause of the US and PA Constitutions because they are impermissibly punitive based on an irrebuttable false presumption, and do not require a finding of guilt beyond a reasonable doubt[.]

[3.] Whether Subchapter H's provisions regarding automatic lifetime-registration requirements, demonstrated earlier in [Bodnari]'s brief to be unconstitutionally punitive, are not severable from its provisions regarding requirements for SVPs: wherefore the latter must be stricken down with the former, along with the entirety of Subchapter H[.]

[4.] Whether the lifetime-registration requirements of Subchapter H of SORNA involve unconstitutionally cruel and unusual punishment.

Bodnari's Br. at 11-12 (answers below, suggested answers, and footnote omitted).

### 1. Evidence Supporting SVP Determination

Bodnari first argues the court erred in designating him an SVP based on a pattern of behavior. Bodnari claims his only other conviction for a sexual offense was for statutory sexual assault, a result of consensual sex that occurred when he was a teenager. Bodnari's Br. at 22. Bodnari contends this shows Dr. Valliere's assessment was flawed, because she stated Bodnari "has proven his own risk of re-offense because he is multiply arrested [sic] for sex crimes," and calls into question Dr. Valliere's conclusion that Bodnari's purported mental disorder makes it likely that he will further commit sexually violent offenses. *Id.* (quoting N.T. (SVP hearing) at 11).

Although Bodnari did not raise this issue prior to appeal, the issue is not waived insofar as Bodnari challenges the sufficiency of the evidence

supporting the SVP determination. **See Commonwealth v. Fuentes**, 991 A.2d 935, 941 n.4 (Pa.Super. 2010). To the extent that Bodnari complains that Dr. Valliere's opinion was erroneous, his argument goes to the weight, and not the sufficiency, of the evidence, a claim that Bodnari has not preserved. **See id.** at 944-45 (holding appellant's challenge to SVP determination was weight claim, where appellant complained Board expert testified "prior sexual assault is one of the best predictors of future sexual assault" and appellant had not been previously arrested or charged for any sexual offenses).[6]

"We will reverse a trial court's determination of SVP status only if the Commonwealth has not presented clear and convincing evidence that each element of the statute has been satisfied." **Id.** at 942 (quoting **Commonwealth v. Geiter**, 929 A.2d 648, 650 (Pa.Super. 2007)). We review the evidence of record in the light most favorable to the Commonwealth. **Id.**

A sexually violent predator is a person who was convicted of an enumerated offense and "who is determined to be a[n SVP] under section 9799.24 (relating to assessments) due to a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S.A. § 9799.12. "The salient inquiry to be made by the trial court is the identification of the impetus behind the commission of

---

[6] **See also Commonwealth v. Feucht**, 955 A.2d 377, 382 (Pa.Super. 2008) (stating challenge to credibility or reliability of expert's SVP determination goes to the weight of the evidence).

the crime and the extent to which the offender is likely to reoffend." ***Commonwealth v. Morgan***, 16 A.3d 1165, 1169 (Pa.Super. 2011) (quoting ***Fuentes***, 991 A.2d at 943) (emphasis omitted). However, evidence of a likelihood of re-offense is not required. ***Id.*** at 1169, 1173.

Dr. Valliere testified that, based on his history of sexual behavior and his anti-social personality traits, Bodnari has a mental abnormality that makes it likely he will engage in predatory sexually violent offenses in the future. She explained that it was not the extent of the criminality of his previous behavior that established Bodnari's risk of reoffending, but his persistence in pursuing minors despite the passage of time and his understanding of the consequences. Viewed in the light most favorable to the Commonwealth, the evidence is sufficient. ***See Fuentes***, 991 A.2d at 944 (on challenge to sufficiency of evidence supporting SVP determination, acknowledging "the well-settled law that an expert's opinion, which is rendered to a reasonable degree of professional certainty, is **itself** evidence" (emphasis in original)); ***Feucht***, 955 A.2d at 382 ("a Board report or opinion that the individual has an abnormality indicating the likelihood of predatory sexually violent offenses is itself evidence").

### 2. Due Process

Bodnari argues that in requiring some sexual offenders to register for their lifetimes, Subchapter H violates the Due Process Clauses of the United States' and Pennsylvania's Constitutions. A challenge to registration requirements is a challenge to the legality of sentence, over which we employ

a *de novo* standard of review. ***Commonwealth v. Groner***, 233 A.3d 807, 808 (Pa.Super. 2020). We presume a legislative act is constitutional, and will only find it unconstitutional if it "clearly, palpably, and plainly violates the [C]onstitution." ***Commonwealth v. Killinger***, 888 A.2d 592, 594 n.2 (Pa. 2005) (citation omitted).

First, Bodnari argues that automatic lifetime registration violates due process because it is founded on the irrebuttable the presumption that "all sexual offenders are dangerous and pose a high risk of recidivation." Bodnari's Br. at 27 (quoting ***Commonwealth v. Torsilieri***, 232 A.3d 567, 573 (Pa. 2020)). Bodnari argues that lifetime registration affects the constitutional right to reputation, and that the presumption is obviously untrue because, according to him, SVP hearings often determine that an individual offender does *not* pose a high risk of recidivation. He further maintains that a reasonable alternative to the presumption exists, as courts could utilize the same assessment process as they do to determine whether an individual is an SVP, to determine whether an individual actually poses a high risk of reoffending.[7]

Bodnari lacks standing to challenge "automatic" lifetime registration. Bodnari seems to complain that Subchapter H of SORNA "automatically"

_____

[7] Bodnari acknowledges that the Pennsylvania Supreme Court confronted the issue in ***Torsilieri***, and remanded for the parties to present additional evidence of whether a scientific consensus exists regarding sexual offenders' recidivism rates that would justify, pursuant to the irrebuttable presumption doctrine, overturning the registration system created by the legislature. Nevertheless, Bodnari lodges his own argument in support of the issue.

subjects an offender convicted of a Tier III offense to lifetime registration, without an opportunity to rebut the presumption that he is likely to reoffend. *See* 42 Pa.C.S.A. 9799.15(a)(3). However, Bodnari is not subject to "automatic" lifetime registration as a Tier III offender. Rather, Bodnari must register for life because the trial court found him to be an SVP. Bodnari cannot complain of the constitutionality of statutory provision to which he is not subject. *Commonwealth v. McKown*, 79 A.3d 678, 691 (Pa.Super. 2013); *Commonwealth v. Smith*, 917 A.2d 848, 852 (Pa.Super. 2007).[8]

Second, Bodnari argues that Subchapter H violates due process in imposing automatic lifetime registration on some offenders without first submitting the triggering facts to a jury for a finding beyond reasonable doubt. Bodnari invokes our statement in *Commonwealth v. Strafford*, 194 A.3d 168, 173 (Pa.Super. 2018), that "SORNA's registration requirements are an authorized punitive measure separate and apart from [an appellant's] term of incarceration." He also asserts SORNA's automatic lifetime registration requirements are punitive under an assessment of the *Mendoza-Martinez*[9] factors. Bodnari relies heavily on the Pennsylvania Supreme Court's discussion

---

[8] *See also Commonwealth v. Semuta*, 902 A.2d 1254, 1261-62 (Pa.Super. 2006); *Commonwealth v. Ciccola*, 894 A.2d 744, 747 (Pa.Super. 2006).

[9] *See Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963).

of the factors in **Commonwealth v. Muniz**, 164 A.3d 1189, 1210-15 (Pa. 2017) (OAJC).[10]

Again, Bodnari attempts to challenge the constitutionality of a statutory provision that caused him no injury. Bodnari was not subject to automatic lifetime registration, but was subject to lifetime registration as an SVP. While the SVP determination was not submitted to a jury or required to be proven beyond a reasonable doubt, our Supreme Court has determined that the registration requirements Subchapter H imposes on SVPs do not constitute criminal punishment. **See Commonwealth v. Butler**, 226 A.3d 972, 993 (Pa. 2020) ("**Butler II**"). Hence, Bodnari has not suffered a due process violation. **Commonwealth v. Manzano**, 237 A.3d 1175, 1179 (Pa.Super. 2020); **Groner**, 233 A.3d at 809.

### 3. Severability of Statutory Provisions

Bodnari next argues that the provisions of Subchapter H regarding registration for SVPs are not severable from those provisions requiring automatic lifetime registration (which Bodnari argues are unconstitutional). As we decline to consider the constitutionality of statutory provisions that do not apply in this case, we need not address this issue further.

---

[10] Again, Bodnari acknowledges that the Pennsylvania Supreme Court encountered this issue in **Torsilieri**, but remanded for development of the issue through expert testimony.

**4. Cruel and Unusual Punishment**

Bodnari's final argument is that because, as he asserts, SORNA's registration requirements are punitive, "it should follow—at least according to the logic of the [trial] court in *Torsilieri*—that the lifetime-registration requirements are arbitrary, excessive and constitute cruel and unusual punishment." Bodnari's Br. at 52 (citing *Torsilieri*, 232 A.3d at 594 (summarizing the trial court's findings)). He does not state whether he argues under the State or Federal Constitution, or provide any authority regarding the standard for deciding what constitutes cruel and unusual punishment.

By substantially failing to develop this argument, Bodnari has waived it. *See* Pa.R.A.P. 2119(a); *Commonwealth v. Woodard*, 129 A.3d 480, 502 (Pa. 2015). Moreover, the appellant in *Torsilieri* was not designated an SVP, and therefore the trial court did not consider whether the registration requirements for SVP's are arbitrary, excessive and constitute cruel and unusual punishment. *See Torsilieri*, 232 A.3d at 572 n.2. Further, as discussed above, our Supreme Court has ruled that the registration requirements for SVPs under Subchapter H of SORNA do not constitute punishment. *See Butler II*, 226 A.3d at 993. We are therefore unable to conclude that registration requirements for SVPs constitute cruel and unusual punishment.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 04/15/2021